# WYATT vs. STEWART.

[TROVER AGAINST SHERIFF.]

1. *Conclusiveness of sheriff's return.*—The sheriff's return on an execution, showing who was the purchaser at his sale, is not conclusive on the real purchaser.

2. *Retention of possession by vendor as evidence of fraud.*—The retention of the possession of personal property, by the grantor in a deed of trust for the benefit of creditiors, after the property has been sold at public auction by the trustee pursuant to the terms of the deed, is not presumptive evidence of fraud.

3. *Validity of unrecorded mortgage.*—An unrecorded mortgage is valid and operative, notwithstanding the want of registration, as against a plaintiff in execution who had actual notice of it before he acquired a lien.

4. *Presumption in favor of judgment.*—To authorize the reversal of a judgment on error, on account of the refusal of a charge asked, the record must affirmatively show that the charge was correct and justified by the evidence.

APPEAL from the Circuit Court of Shelby.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by Frederic Stewart, against Todd R. Wyatt, to recover damages for the conversion of twenty thousand pounds of seed cotton and nine hundred bushels of corn, which the defendant, as sheriff of said county, had seized and sold under execution as the property of one Thomas L. Pledger; and was commenced on the 14th January, 1856. The cotton and corn in controversy were raised by said Pledger, in the year 1855, on a plantation which had formerly belonged to him, but which he occupied and cultivated during the year 1855 under a lease from the plaintiff. The plantation was sold under execution against Pledger, on the 2d Monday in August, 1850, and was bought by one A. A. Sterrett, who received the sheriff's deed, and, on the 31st January, 1851, sold and conveyed the lands to Strang & Ulrick; and the latter, on the 1st February, 1851, sold and conveyed to the plaintiff. The contract between plaintiff and Pledger, under which the latter cultivated the land, and under

which the former claimed the cotton and corn in controversy, was in the following words :

" Memorandum of an agreement, made this 17th June, 1851, between Frederic Stewart, of the city of Mobile, and Thomas L. Pledger, of Shelby county, Alabama, to-wit: The said Stewart agrees to lease and to farm let unto the said Pledger that certain tract or parcel of land in Shelby county, being the same that was conveyed to said Stewart by Thomas Strang and John G. Ulrick and their wives on the 1st February, 1851, and being the farm on which said Pledger now lives; said Pledger to have the use and occupancy of the same for the term of five years from the 1st January last, or until the 1st January, 1856, on the terms and conditions following: Said Pledger agrees to pay Stewart the sum of $500 on or before the 1st January of each year, commencing on the 1st January, 1852, and ending at the expiration of this lease, (say, on the 1st January, 1856,) making in all $2,000; these amounts to be endorsed on the notes and claims said Stewart now holds against said Pledger. Pledger agrees to keep the arm in good order, to keep the buildings and fences in good repair, and to preserve the timber from waste. It is understood and agreed, that in case of any default in payment on the part of said Pledger, or in case of any neglect or waste of the property, then said Stewart will have the right to take possession of the same, and to eject said Pledger from the premises. It is further understood and agreed, that all the cotton made on the place is to be the property of said Stewart, or controlled by him or his agent each year, until the said sums of $500 are respectively paid. It is further agreed on the part of said Stewart, that if said Pledger shall well and truly pay, or cause to be paid, to said Stewart, the said sum of $2,000, in manner described above, and also all such clams or notes as said Stewart may have against said Pledger, over and above said amount, at the expiration of this lease, then said Stewart will convey to said Pledger, or to his legal representative, by quit-claim deed, all and singular the land and premises above named, for his own proper use and benefit. In witness whereof," &c.

On the trial, as the bill of exceptions shows, the plaintiff read in evidence the judgment and execution under which the land was sold, together with the sheriff's return on the execution, the sheriff's deed to Sterrett, the deed of Sterrett to Strang & Ulrick, the deed of Strang & Ulrick to plaintiff, and the written contract between plaintiff and Pledger above set out. The return on the execution showed that one Mazange was the purchaser at the sheriff's sale. " The plaintiff then proved, by A. A. Sterrett, that he was present at said sale, and was the highest and best bidder for said land, and that it was knocked down to him; that he was an attorney-at-law, and at that time had in his hands for collection a claim against said Pledger in favor of said Mazange; that the land sold for less than its value, and he directed the sheriff not to make him a deed until he could write to Mazange; and see whether he would not take the land ; that he did write to Mazange, who refused to take the land; and that the sheriff then made a deed to him (witness) for said land, under and in pursuance of said sale. The defendant objected to all the evidence which tended to show that Sterrett, and not Mazange, was the purchaser at said sheriff's sale, because it tended to contradict the sheriff's return on the execution; but the court overruled the objection, and allowed the evidence for the single purpose of showing who was the real purchaser at said sale; and defendant excepted."

The several deeds above mentioned were duly recorded, but there was no proof of the registration of the written contract between plaintiff and Pledger. " The defendant reserved all objections to the relevancy, legality and competency of said contract as evidence. The plaintiff introduced evidence, also, tending to show that, at the time of the sale of said land by Sterrett to Strang & Ulrick, Pledger owed the latter more than $3,000, and about $900 to plaintiff; that Pledger held under this contract, and went on to cultivate said land, and shipped to plaintiff, for some three years, the cotton raised on the land, as the cotton of the latter; that said cotton did not, for either of said years, amount to $500 in value; that the cotton raised on said farm in 1855 was worth about $400 ; and

that defendant, in December of that year, levied on said cotton as the property of said Pledger, under an execution regular on its face, and sold the same to a third person, with notice of the plaintiff's claim to said cotton at the time of the sale."

The defendant then offered in evidence a deed of trust, dated the 30th March, 1850, by which said Pledger conveyed the said land, " together with all his property except a few household articles," to one John Sumner, as trustee, to secure a debt due to Strang & Ulrick; which deed conferred on the trustee a power of sale, and was duly recorded within the time required by law. " The defendant then proved, that said Pledger owed at that time several thousand dollars, in addition to the debt secured by said deed; that said property was sold by the trustee, at public outcry, after regular notice, in January, 1851; that said Sumner, as agent of Strang & Ulrick, bought at the sale, besides the land, two horses, a yoke of oxen, six head of cattle, a cotton-gin, and some other property; that the sale was fair and *bona fide,* and for the single purpose of securing the debt of Strang & Ulrick, who. lived in Mobile; that he (Sumner) requested Pledger to allow the property to remain there, until he could receive instructions from his principals as to what he should do with it; that Pledger assented to this; that the land was shortly afterwards sold by Strang & Ulrick to plaintiff, for $1,200, and the other property at $284; that the money was all paid, and witness was appointed by plaintiff as his agent for the management of said property; and that Pledger continued in possession of the property under the contract hereinbefore set out. The defendant introduced evidence, also, tending to show that Pledger had been in possession of said property since the date of said sale under the deed of trust, managing and controlling it as his own, but admitting title in the plaintiff; and that he had sold the yoke of oxen, cows, some wheat and corn. But there was no evidence that the plaintiff, who lived in Mobile, or his agent, who lived twenty-nine miles distant, knew these facts, except that the latter was occasionally on the premises." The defendant then read

in evidence the judgment and execution under which he sold the cotton, " and proved that the debt, on which the judgment was founded, was in existence before and at the time said deed of trust was executed."

The defendant asked the following charges to the jury:

" 1. That if they believed from the evidence that any of the personal property sold at said trust sale was bought at the sale by Strang & Ulrick, through their agent, and was left in the possession of Pledger after the sale, that fact was *prima-facie* evidence of fraud.

" 2. That if they believed from the evidence that the debt, upon which was issued the execution in the hands of the sheriff, was in existence before the making of said deed of trust and said contract between plaintiff and Pledger, and that said contract never was recorded,—then said contract was void as to the plaintiff in said judgment, and the cotton levied on was subject to the execution.

" 3. That if they believed the facts stated in the last charge asked, then said contract between plaintiff and Pledger was void as to the plaintiff in the judgment, as to the clause relating to the cotton raised on the land by Pledger in the year 1855, and said cotton was subject to said execution."

The court refused each of these charges, and the defendant excepted; and he now assigns as error all the rulings of the court to which he reserved exceptions.

ALEX. & JNO. WHITE, for appellant.

JAS. B. MARTIN, *contra*.

A. J. WALKER, C. J.—There was no error in allowing proof that Sterrett, to whom the sheriff conveyed the land, was the purchaser, instead of Mazange & Co., to whom the sheriff in his return asserted that the sale was made. The sheriff's return is not *conclusive* against the purchaser at his sale.—Jackson v. Sternbergh, 1 Johns. Cases, 153; Mitchell v. Lipe, 8 Yerg. 179; Wheaton v. Sexton, 4 Wheaton, 503; Jackson v. Walker, 4 Wend. 462; Ingersoll v. Sawyer, 2 Pick. 276.

[2.] The retention of possession after the sale, by the

maker of a deed of trust, of property sold upon notice at public outcry by the trustee, is not *prima-facie* evidence of fraud.—Montgomery v. Kirksey, 26 Ala. 172; Maulden & Terrell v. Mitchell, 14 Ala. 814. By this principle, the refusal of the court to give the first charge asked is sustained.

[3.] The second and third charges asked place the liability of the property levied on upon the ground, that the instrument by virtue of which the plaintiff claims title was a mortgage, and that it was not recorded. Notwithstanding the instrument may have been a mortgage, and may not have been recorded, it may nevertheless have been valid against the party, under whose execution the defendant, as sheriff, sold the property. If the plaintiff in execution had notice of the mortgage before he acquired a lien, it would have been valid and operative against him, notwithstanding the want of registration.—Smith v. Zurcher, 9 Ala. 208; Daniel v. Sorrels, 9 Ala. 436; Wallis v. Rhea, 10 Ala. 451; S. C., 12 Ala. 646; Jordan v. Mead, 12 Ala. 247. The inefficiency of the instrument against the execution, by virtue of which the defendant levied, was not a necessary consequence of the want of registration. It would, therefore, have been improper to have charged the jury, that the instrument, although it may have been a mortgage, was inoperative, merely on account of the want of registration, unless the proof was such as to justify the court in assuming that the plaintiff in execution did not have notice of the instrument before he acquired a lien.—Rowland v. Ladiga, 21 Ala. 9; Dill v. Camp, 22 Ala. 249. It follows, that we must not impute error to the court below, in refusing the charges, unless we can see that the assumption of the want of such notice would have been legitimate.

[4.] The bill of exceptions does not profess to bring *before* us the entire evidence which was *before the circuit judge* when he refused to give the charges. There may have been, for aught that we can affirm on the authority of the record, evidence proving, or conducing to prove, actual notice to the plaintiff in execution before he obtained a lien. " We can not reverse, merely because we cannot

see that the court below acted correctly. To authorize a reversal, it must appear from the record that the action or ruling of the court below was wrong."—Duckworth v. Butler, 31 Ala. 164. Here we cannot see, by looking at the record, that the court ought to have assumed the want of notice to the plaintiff in execution, and given the charges asked; nor can we see, by looking at the record, that the court ought to have refused to make such assumption, and to have rejected the charges asked. According to the rule above extracted from Duckworth v. Butler, we cannot reverse, because we cannot see "that the action or ruling of the court below was wrong." The presumption is not to be indulged that the court erred.—Leverett's Heirs v. Carlisle, 19 Ala. 80; Wilson v. Calvert, 18 Ala. 274; Dent v. Portwood, 17 Ala. 242; Kirkland v. Oates, 25 Ala. 465; Barnes v. Mobley, 21 Ala. 238; Doe v. Godwin, 30 Ala. 442.

The judgment of the court below is affirmed.