# Robinson *v.* Bullock.

## *Action for Breach of Special Contract.*

1. *Alteration of written contract by parol.*—Although it may be true that a liability, created or manifested by a contract in writing, can not be discharged by a parol executory agreement; yet an executory contract in writing, whether under seal or not, may be altered, modified, or rescinded, by a subsequent parol agreement; and the mutual assent of the parties to the new agreement is a sufficient consideration to support it.

2. *Charge requiring explanation.*—A charge requested, which requires explanation, or has a tendency to mislead the jury, may be refused.

3. *Partial performance.*—The acceptance of part performance of a contract is not a waiver of the right to claim full performance, or to recover damages for the breach as to the part not performed.

4. *Abstract charge.*—Charges requested must be based on the evidence; and the refusal of a charge requested, although it may assert a correct legal proposition, will not work a reversal, unless it affirmatively appears that it was justified by the evidence.

[Robinson v. Bullock.[

5. *Measure of damages for breach of contract.*—For the breach of a contract, by which defendant promised to supply wood and logs for a saw-mill erected on her lands by plaintiff, the profits to be equally divided between them, the measure of damages is not the amount which the plaintiff would have received, but the net profits he would have realized, if the contract had been fully performed.

6. *Charge on part of evidence.*—When there is a conflict in the evidence as to a material fact, a party may ask a charge adapted to the phase of the case most favorable to himself ; but, if he requests a charge which ignores material facts, and requires additional or explanatory instructions to prevent it from misleading the jury, such charge may properly be refused.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

This action was brought by John L. Robinson, against Mrs. Drusilla A. Bullock; was commenced on the 23d October, 1868, and sought to recover damages for the defendant's alleged breach of a written contract, which was in the following words : ."Memorandum of agreement, made and entered into this, the 13th day of November, A. D. 1865, between John L. Robinson of the one part, and Mrs. D. A. Bullock of the other part, witnesseth, that for and in consideration of the fact that said J. L. Robinson shall erect and put in order a steam saw-mill, at or near Cross Keys in said county, the said Mrs. D. A. Bullock agrees to furnish saw-logs to said mill for five years next ensuing the date of this instrument'; said logs to be furnished daily to said mill, or in such way as to keep the mill constantly running. Mrs. Bullock agrees, also, to furnish wood for running said mill. Said Robinson covenants, also, and agrees to superintend said mill, and the cutting and hauling of stocks necessary for the supply of said mill. It is understood and agreed, also, between the said parties, that the lumber be equally divided between them at the mill, or the proceeds thereof be equally divided between them after sale of the lumber. The said mill is to be located upon the said D. A. Bullock's land, near Cross Keys, in Macon county. In witness whereof," &c. This contract was signed by both parties, was under seal, and attested by two witnesses. The breach alleged in the complaint was, in substance, that the defendant failed to supply logs and wood for the mill during the period stipulated. The defendant pleaded the general issue, "with leave to give in evidence any matter not required to be sworn to, and plaintiff replied with like leave."

"On the trial," as the bill of exceptions states, after producing the contract sued on, "the plaintiff offered his own evidence, tending to show that, in compliance with the terms of said agreement, he erected a steam saw-mill upon the defendant's land, and was at considerable expense in purchasing and erecting said mill, erecting buildings, hiring and

feeding hands; that said mill was in running order in April, 1866, and from that time until the end of that year he kept about fourteen hands employed, at from $25 to $75 per month; that the defendant hauled logs to the mill about two months, or more, but did not furnish logs daily, or in sufficient quantity to keep the mill running constantly, and failed and refused to furnish logs after the month of November, 1866; that she did not furnish wood to run said mill; that he sustained damage, according to his estimate, of $10,000 per year by defendant's failure to perform her agreement to furnish logs to said mill; that the defendant accepted the mill erected by him, as being erected in accordance with the contract; that he left the mill in November, 1866, and moved away, and never afterwards attempted to operate it; that he fully performed his part of the agreement during the time he operated said mill; that he understood the defendant had only about 500 acres of pine timbered land, and believed that, if stocks or saw-logs had been furnished to the mill to its full capacity, he could have cut up the timber from said land in three or four years; that he. had a settlement with the defendant, in November, 1866, and received from her a receipt," which he produced, dated November 3d, 1866, and in these words: "Received of J. L. Robinson two accounts on the M. and W. P. R. R. Company; one for $585.25, and the other for $948.22, making in all $1,533.47. Of this amount, $1,258.16 is due me, and the balance to be paid over to said J. L. Robinson. This is a settlement in full, up to October, 1866, providing the accounts are paid up, so far as my interest in lumber is concerned." "There was other evidence by the plaintiff, tending to show that he erected the mill on the defendant's land; that it had capacity to saw from 8,000 to 10,000 feet of lumber per day; that the daily expense of running the mill was about $20; that it was not supplied with logs regularly, and was not supplied with logs at all after about the 1st October, 1866, and ceased to be operated by him altogether after that time; and that he was injured at least $20 per day by the failure to have logs supplied.

"The defendant introduced evidence tending to show that, in May, 1866, she contracted with McElhaney and Keller to furnish logs to said mill; that the plaintiff agreed said parties should furnish the logs instead of defendant, and that defendant should not be required to furnish logs for the time said McElhaney and Keller were to furnish the same under said agreement, which was for the period of eighteen months from May, 1866; that plaintiff ceased to operate said mill in October, or November, 1866, and left the same, and made no

further effort to run it at any time thereafter; that said Mc-Elhaney and Keller furnished logs to said mill for a considerable time after their contract with the defendant; and that the plaintiff agreed to this arrangement, releasing defendant from obligation to furnish logs to said mill during said eighteen months. The defendant testified, that she made no objection to the mill erected by plaintiff, as being in accordance with the contract; that she then had about one thousand acres of well-timbered pine land near said mill, enough timber to keep said mill running at full capacity for six or seven years; that one McLaren had been running his saw-mill and sawing from said land since 1870, and that she now has a large quantity of timber yet standing on said land. Said McLaren testified, for the defendant, that he moved his steam saw-mill on the defendant's land near Cross Keys in said county, in 1870; that his mill would saw some 6,000 feet of lumber per day; that it has been run about one-third of the time since it was erected; that the stocks he has used have been principally taken from the land heretofore cut over, and that the defendant still has a fine body of timbered land there.

The plaintiff requested, in writing, the following charges : 1. A liability evidenced by a written contract or agreement, though not under seal, can not be discharged by an executory parol agreement. 2. Although the jury may, from the evidence, believe that the plaintiff may have failed to comply with some portion of the said agreement between him and the defendant, and that the defendant, knowing of said failure on the part of the plaintiff, still continued to treat the same as binding and existing, and accepted the continuance of said agreement in force; then this was a waiver of the said failure in that particular, and she can not now set up such failure and breach in defense of this action. 3. If the jury believe, from the evidence, that an agreement was made in May, 1866, between the defendant, Dr. Keller and McElhaney, by which said McElhaney and Keller were to furnish saw-logs, at said mill, for one half of Mrs. Bullock's share of the lumber; such agreement or contract did not have any effect, or afford any excuse for or on account of the defendant's failure (if there was such failure) to deliver saw-logs after such period of eighteen months had elapsed. 4. If the jury believe, from the evidence, that the plaintiff has complied on his part with the said contract, and that there has been a breach or failure on the part of the defendant, and that the plaintiff has been injured and damaged thereby; then the plaintiff would be entitled to recover the amount

which would have been received, if the contract had been kept or performed, or if it had not been broken.

"5. If the plaintiff constructed a mill at his own expense, and at the place designated, with capacity reasonably adapted to carrying into effect the object the parties had in view, in consideration of the wages of the section in which the contract was made and was to be performed, and from the relative situation of the parties, and the circumstances surrounding them when the contract was entered into, and complied with the terms of his contract as specified by said agreement sued on ; then he was entitled to a performance on the part of the defendant; and if they should further believe, from the evidence, that the defendant has violated her contract, either in failing to supply the mill with wood or stocks, as required by said contract, and plaintiff was thereby injured or damaged ; then, under such state of the case, there was a breach of the contract on the part of the defendant, and the plaintiff became entitled to recover damages on account of such breach.

"6. If the jury believe, from the evidence, that the plaintiff testified (if he did so testify) that, if logs had been furnished sufficient to run said mill to its capacity—say from about 500 acres he could have cut the timber into lumber in three or four years ; and that Mrs. Bullock testified (if she did so testify) that she had from 900 to 1,000 acres of pine timbered land contiguous to said mill, and enough to run said mill six or eight years to its greatest capacity, and that McLaren had been running his saw-mill and sawing her timber since 1870, and she now had a large lot of timber still standing ; and that said McLaren testified (if he did so testify) that his mill had been on the defendant's land since 1870, and had run about one third of its time, and cut about 6,000 feet per day, and that the stocks cut by him were principally on lands before cut over; that they will look to all these circumstances, if proved, with others bearing upon the subject, in determining whether the mill was such as the contract contemplated ; also, to the testimony of the defendant (if she did so testify) that she accepted said mill as the one plaintiff was to erect ; and if they find that the mill was such as the parties intended by their agreement, and that the plaintiff otherwise performed his contract, and that defendant committed a breach of said contract, and that plaintiff was thereby injured ; then plaintiff has a right to recover, to the extent of the actual injury sustained."

The court refused each of these charges as asked, and the plaintiff duly excepted ; and he also excepted to the follow-

ing charges, which were given by the court on the request in writing of the defendant:

"1. If the jury believe, from the evidence, that when the contract was entered into between Mrs. Bullock and McElhaney and Keller, the plaintiff agreed to release Mrs. Bullock from all obligation under the contract between them, for a specified time, then they can not find a verdict for the plaintiff, for the defendant's failure to deliver wood.

"2. Although the jury may believe that Mrs. Bullock agreed to deliver wood to the mill, and that she failed to do so ; still, they can not find a verdict for plaintiff, for damages ensuing by reason of such failure, unless the evidence shows that he was so damaged, and how much he was damaged, by reason of the failure to deliver the wood : if the evidence fails to show the amount of his damage, he can not recover.

"3. If the jury believe, from the evidence, that an agreement was made, about the month of May, 1866, between the plaintiff, defendant, and said McElhaney and Keller, to the effect that defendant was to be relieved from the duty of superintending the cutting and hauling of stocks, and said McElhaney and Keller were to cut and haul stocks for eighteen months, and were to receive one-fourth of the lumber, or one-fourth of the proceeds of the sale of the lumber ; then the defendant was thereby relieved from the obligations to cut and haul stocks during the time specified.

"4. If the jury believe that, after the execution of the original contract between the plaintiff and defendant, and in or about May 1866, a verbal contract or agreement was made, by and between plaintiff and defendant and said McElhaney and Keller, by which the plaintiff was to be relieved from the duty of superintending the cutting and hauling of stocks, and the defendant was to be relieved from the obligations to cut and haul stocks, and said McElhaney and Keller were to cut and haul stocks for eighteen months ; and that in consequence of, and upon the faith of said agreement, the said McElhaney and Keller and the defendant entered into the said contract of May, 1866 ; then and thereby the defendant was relieved from the obligation to cut and haul stocks during the time specified in said contract last named.

"5. If the jury believe that the plaintiff undertook, by verbal contract, after the contract sued on was made, to superintend the cutting and hauling of stocks to the mill, and was authorized to hire hands and teams at the expense of the defendant ; then the defendant was thereby relieved from the duty of furnishing the mill with stocks, unless the testimony shows that such verbal contract was subsequently rescinded."

The charges given at the instance of the defendant, and

[Robinson v. Bullock.]

the refusal of the charges asked by the plaintiff, as above stated, are now assigned as error.

W. C. McIver, with W. H. Barnes, and Geo. W. Gunn, for the appellant, cited *Hunt & Hunt v. Barfield,* 19 Ala. 117 ; *Walker v. Greene,* 22 Ala. 679; *Nesbitt v. McGehee,* 26 Ala. 748; Addison on Contracts, 1072, 1074, 1110.

H. C. Tompkins, and W. C. Brewer, *contra,* cited 1 Chitty on Contracts, 154–5, note *d* ; *Wilson v. Calvert,* 18 Ala. 274 ; *McLemore v. Nuckolls,* 37 Ala. 676 ; 1 Brickell's Digest, 248, § 79.

BRICKELL, C. J.—The statements of the evidence, in the bill of exceptions, are very meagre ; but, referring the instructions given or refused to them, it does not seem to us that the point of controversy could have been, whether the contract under seal made by the parties, while it was executed in whole or in part by the plaintiff, could have been discharged by a parol executory agreement, but rather whether it was not materially altered, or modified, by a subsequent parol agreement. While it may be true, that a liability manifested by a contract in writing cannot be discharged by a mere parol executory agreement, it is equally true that a contract in writing, whether under seal or not, executory in all its terms, involving mutual duties, may, by a subsequent parol agreement, be modified, altered, or rescinded ; and no other consideration is necessary to support such agreement than the mutual assent of the parties.—1 Brick. Dig. 394, § 233; 1 Chit. Con. (11th Am. Ed.), 154. And if, as there was evidence tending to show, it was agreed between the parties that McElhany and Keller should, for the period of eighteen months, furnish logs to the mill, in the place of defendant, the agreement, though by parol, relieved the defendant from the duty of furnishing logs during that period, and from all liability for damages because the logs were not furnished in sufficient quantity to keep the mill running. Whether such an agreement had been made, and its effect, not as discharging *in toto* the written contract, but as modifying it, shifting its duties from the defendant to McElhany and Keller, was the matter of controversy. In this view of the case, there was no error in the refusal of the first instruction requested by the appellant. Given in its terms, it would have had a tendency to mislead the jury, if it had not been explained that by parol the contract could be modified. A court may properly refuse an instruction having a tendency to mislead, or requiring explanation.—1 Brick. Dig. 339, § § 560–61.

The law is not, as asserted in the second instruction, that if a party accepts a partial performance of a contract, he waives it as matter of defense, when full performance is claimed of him. Whatever damages he may have sustained, in consequence of the partial performance, he may recoup. *Jones v. Dyer*, 16 Ala. 221; *Hunter v. Waldron*, 7 Ala. 753.

Charges requested must be based on the evidence; and it must affirmatively appear that the charge not only affirms a correct legal proposition, but that it is justified by the evidence, to authorize a reversal.—*Wyatt v. Stewart*, 34 Ala. 716. It may be true, that if the plaintiff had been willing, and in readiness to perform the contract on his part—to operate the mill as is stipulated, after the expiration of the period during which McElhany and Keller were to furnish logs —the defendant would have been bound to performance on her part. But it was not a disputed fact, that before that period expired, the plaintiff had abandoned the mill, and never returned to it. The unwillingness and inability of the plaintiff to perform the contract on his part, relieved the defendant from the duty of performance on her part. The third charge requested was properly refused, because not justified by the evidence.

In any event, the measure of damages the plaintiff could recover was not the amount he would have received if the contract had been performed, as is asserted in the fourth charge requested. The contract involved the plaintiff in labor and expense in performance on his part, which he had not yielded, and which must have been yielded. From performance on his part, as well as performance by the defendant, it would be ascertained how much he would have received. Compensation for labor and expense, to which he had not been subjected, it was not his right to claim. The profits he lost by the failure of the defendant to keep the contract on her part, was, in any event, the measure of recovery.— *George v. C. & M. R. R. Co.*, 6 Ala. 234; *Ramey v. Holcombe*, 21 Ala. 567; *Fail v. McRee*, 36 Ala. 61.

The fifth and sixth instructions requested by the appellant were properly refused, because they disregard—treat as if not known—the fact that there was evidence tending to prove that the contract was materially modified by the subsequent agreement, changing to McElhaney and Keller the duty of furnishing logs, instead of the defendant, for the period of eighteen months, and the undisputed fact that, before that period expired, the plaintiff had abandoned the mill, and never returned to it. When there is a conflict of evidence, a party may request instructions adapted to the phases of the case his evidence tends to support; and the court will not

err in giving them, though there may be no reference to the conflicting evidence. But a charge requested, which disregards material facts, and would compel the giving of other additional and explanatory instructions, may be properly refused.

As we have said, the bill of exceptions is very meagre in its statements of the evidence—it does not purport to contain all, or the substance of the evidence. It is, of consequence, impossible for us to say, that the first and second instructions given on request of the defendant were not justified by the evidence, or that they were not abstract, working no injury to the appellant, and furnishing no ground of reversal. The remaining instructions were in accordance with the views we have already expressed.

The judgment is affirmed.

Stone, J. not sitting.