## CLARK v. COX *et al.*, *Appellants*.

### Division Two, December 16, 1893.

1. **Fraudulent Conveyance**: EVIDENCE: SALE UNDER DEED OF TRUST: GRANTOR'S STATEMENTS. On the trial of the question whether plaintiff's purchase of goods sold under a deed of trust was fraudulent as being made in the interest of the grantor in the deed to cover up the goods, as against his creditors, statements made by the grantor before and subsequent to the sale are incompetent, unless a conspiracy to defraud is shown to have existed at the time of the sale.

2. ———: ———: VENDOR'S STATEMENTS. Where, however, the sale is a direct one from the vendor to the vendee for the purpose of defrauding the former's creditors, then his statements made before the sale are competent to show his purpose in the matter.

3. **Practice**: INSTRUCTION: HARMLESS ERROR. The giving of an instruction having no bearing on the issues is no ground for reversal when it could not have affected the verdict. (Revised Statutes, 1889, sec. 2303).

4. **Fraudulent Conveyance**: SALE UNDER DEED OF TRUST: PURCHASER. The fact that one purchasing goods at a sale under a deed of trust intends that the grantor in the deed shall have them, does not make the sale fraudulent and void as to such grantor's creditors.

5. ———: ———: POSSESSION. Where a public sale is made under a deed of trust, after due notice, the fact that the grantor in the deed remains in possession of the property after the sale, is no evidence of fraud, and such sale is valid, if free from fraud in fact.

*Appeal from Clinton Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

AFFIRMED.

*Hicklin & Yates* and *Alexander & Richardson* for appellants.

(1) We contend that Clark and Swike were engaged in a conspiracy to defraud Swike's creditors. If a *prima facie* case of conspiracy has been made out by all the facts and circumstances in proof, then the independent statements and admissions of Swike are

admissible and should not have been excluded from the consideration of the jury. *Spies v. People*, 12 N. W. Rep. 865; s. c. 122 Ill. 1; *State v. Ross*, 29 Mo. 32; *Bank v. Russell*, 50 Mo. 531; *Boyd v. Jones*, 90 Mo. 454; *Holmes v. Braidwood*, 82 Mo. 610; *Cordes v. Straszer*, 8 Mo. App. 61; *Weinstein v. Reid*, 25 Mo. App. 41; *Desenberger v. Harrington*, 28 Mo. App. 632; *Field v. Liverman*, 17 Mo. 218; 4 Am. and Eng. Encyclopedia of Law, p. 629, sec. 6. (2) It is for the court in the first place to say whether there is any evidence of a conspiracy, and for the jury to determine whether there was one and its object. *State v. Walker*, 98 Mo. 95. (3) The acts and declarations of confederates are admissible against their associates when they form part of the *res gestæ*, and accompany the prosecution of a common object. *Poe v. Stockton*, 39 Mo. App. 550. (4) In regard to the admission of acts and declarations of one conspirator as original evidence against each member of the conspiracy, the rule is substantially the same in civil and criminal cases. *Card v. State*, 109 Ind. 415; *Wolfe v. Pugh*, 101 Ind. 293; *Daniels v. McGinnis*, 97 Ind. 549. (5) Plaintiff's ninth instruction is erroneous, as it ignores the evidence tending to prove a fraudulent combination, or conspiracy between Clark and Swike to defraud the creditors of Swike. If such combination or conspiracy existed, then the acts and declarations of Swike were admissible against Clark, whether he was present, or knew of them at the time or not. (6) The court erred in refusing defendant's instruction numbered 3 1-2. *Dallam v. Renshaw*, 26 Mo. 533.

*J. F. Harwood, T. J. Porter* and *Crosby Johnson* for respondent.

(1) As Clark acquired his title to the property in dispute through a recorded mortgage, and after the

mortgagees had shut the store for a considerable period, pending the foreclosure of their mortgage, he was not bound to change signs, or change clerks or exclude Swike from the store. *Garland v. Chambers*, 49 Am. Dec. 63; 11 Smede & M. 337; *Greathouse v. Brown*, 17 Am. Dec. 67; 5 T. B. Monroe 280; *Wyatt v. Stewart*, 34 Ala. 716. (2) Property sold at public sale, after publication of notice, stands on a different footing from property at private sale; and retention of possession by the execution or mortgage debtor is not a badge of fraud. *Walter v. Gernant*, 53 Am. Dec. 491; 13 Pa. St. 515; Freeman on Executions, sec. 151; *Floyd v. Goodwin*, 29 Am. Dec. 130; 8 Yerg, 484. (3) If Clark bought and paid for the goods with his own money, and paid for the goods a fair price, then creditors could have no ground to complain. *Gutzweiler v. Lachman*, 28 Mo. 434; *Nichols v. Eaton*, 91 U. S. 716; *Pickins v. Dorris*, 20 Mo. App. 1.

BURGESS, J.—This is an action of replevin for a stock of goods. One John D. Swike being indebted to Isaac Lesem & Company in the sum of $4,184.90 on account of the purchase of goods from them, executed a deed of trust upon a stock of dry goods and groceries of which he was the owner to secure said indebtedness. The goods were afterwards publicly sold in pursuance of the terms of the deed of trust, and were purchased by the plaintiff, who was a miller and lived at a different place from where the goods were. After the sale, Swike remained around the store and sometimes assisted in selling goods, but one Joseph Hess was in the control of and conducted the business just as it had been done before the sale by the trustee, except that thereafter the business was conducted and books kept in the name of the plaintiff, Clark. There was no visible change of possession further than as here stated

The defendant Cox was, at the time the goods were replevied, sheriff of Daviess county, and by virtue of several writs of attachments in his hands against Swike sued out by his codefendants (who were made parties defendants on their own motion) had seized, attached, and taken into his possession the stock of goods in question from whom they were subsequently replevied by plaintiff. There is no question as to the *bona fides* of the indebtedness of Swike to Lesem & Company. The defense was that the purchase of the goods by plaintiff was by fraudulent collusion between him and Swike to hinder and delay the latter's creditors in the collection of their debts and that the goods were in fact Swike's, and were bought and held by plaintiff for him, although purchased in his own name. There was a vast amount of testimony tending to sustain either theory of the case. The jury found for plaintiff, and defendants appealed.

The first error in the order of trial assigned by appellant is as to the competency of the statements made by Swike to various witnesses both before and after the sale of the goods under the deed of trust and the purchase by plaintiff, his act in taking money from the drawer in the store and also the statements made by some of the employees after the purchase by Clark. It is virtually conceded by counsel for defendants that unless there was a conspiracy shown to exist between plaintiff and Swike, to defraud the creditors of the latter and to cover up the goods so that they could not be reached by Swike's creditors, such evidence was properly excluded. If the transaction had been a direct sale of the goods from Swike to plaintiff for the purpose of defrauding the creditors of Swike then his statements made before the pretended sale would have been admissible as against him as tending to show the purpose with which the sale was made;

*Holmes v. Braidwood*, 82 Mo. 610. But this is not that kind of case. It is not, therefore, a case in which a sale from a debtor is attacked for fraud. The case is one in which a sale under a deed of trust is made, and the purchase at that sale is charged as being for and in the interest of Swike, and to cover up the goods as against his creditors and is assailed as being fraudulent and void. This evidence was not admissible unless there was shown to exist a conspiracy between the plaintiff and Swike at the time of the purchase of the goods by him at the trustee sale by which he was to purchase the goods in his own name for Swike, and so hold them and to cover them up so that they could not be reached by the latter's creditors, and we are not prepared to say from the evidence adduced that any such conspiracy was shown to exist and must therefore rule adversely to defendants on this point.

Complaint is made of the ninth instruction given by the court of its own motion, which is as follows:

"If the jury find from the evidence that Clark bid off the goods at the mortgagee's sale and received possession of them, and put Hess and others in charge of the goods to manage and control for his benefit, then no statements made nor things done by said agents and clerks in the control and management of said goods can be considered by the jury as affecting Clark's rights to the goods unless it is shown that said statements were made or things done by Clark's authority, or that he knew of such statements made or things done and sanctioned them, and if the jury find that said parties were placed in possession of the goods, to manage and control the same for Clark, then declarations or statements made by Swike in respect to the control or management of the goods in the presence or hearing of such agents or clerks cannot be regarded as made in the presence or hearing of Clark

unless it be shown that he knew of such declarations or statements and sanctioned them. Nor can Clark be bound or affected by any fraudulent design entertained by Swike unless he becomes a party to such fraudulent design.''

No statement made by Swike, or any of the employees of plaintiff, after the purchase of the stock of goods by him with respect of the goods, or what interest Swike had in them, or the acts of Swike in taking money from the drawer were admissible against plaintiff, unless the statements were made in his presence and the money was taken with his knowledge. The instruction was evidently correct and fully justified by the facts and circumstances in proof.

The court also instructed the jury over the objection of defendants that: ''The evidence admitted as to business transactions between Swike and Friede was admitted only for the purpose of showing that they had such transactions, and the character of the transactions, as such transaction may bear on the relations subsisting between Swike and Friede.''

It is somewhat difficult to see why this instruction was given, as it does not appear to have any bearing on the case in any way whatever. It is true that the evidence disclosed some business transactions between Swike and his son-in-law, Friede, just about the time of the trustee's sale, in regard to some notes that Swike turned over to him, but the transaction had no tendency to show a fraudulent conspiracy between plaintiff and Swike in regard to the purchase of the goods and might well have been excluded; but, as it could not possibly have had anything to do with the verdict of the jury, the case will not be reversed on that ground alone. Section 2303, Revised Statutes, 1889, provides that this court ''shall not reverse the

judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error and materially affecting the merits of the action.''

We come now to the consideration of the action of the court in refusing the following instruction prayed for by defendants, and which reads as follows: ''Although the jury may believe from the evidence that Frank Clark paid for the goods bought by him at the mortgagee's sale with his own money, they will find for the defendant, if they further believe from the evidence that he bought the goods for the benefit of Joseph Swike and to enable Swike to place the goods beyond the reach of his creditors.''

The doctrine announced in this instruction would prohibit one person from giving property in trust for another, or to hold it in his own name for the benefit of another for the purpose of keeping it from his creditors. It was too broad and far-reaching, and was not authorized by the facts in this case.

In the case of *Dallam v. Renshaw*, 26 Mo. 533, which is relied upon by defendants, it is said: ''If the purchase * * * under execution was valid, Stacker & Erwin became the absolute owners of the property; and if, as absolute owners, they thought proper to give Collins [who was the debtor in the execution] an interest, contingent or fixed, of one-half or one-third or any other amount, such a transaction is not a fraud upon Collins' creditors. Collins' interest might perhaps be reached by execution, but the purchasers would only buy his interest—nothing more. * * * The principle may be illustrated by supposing that S. &. E. had $50,000 worth of property in St. Louis, independent of any acquisition from Collins, not conveyed to them by deed directly from Collins or purchased under execution against his property, and through motives

of friendship, or for any other motive, thought proper to give Collins an interest in this property, and to retain title in their own name. Is this a fraud upon the creditors, within the meaning of the common law or the statute of fraudulent conveyances? Can the creditors claim the whole property and destroy the title and interest of S. &. E.? It is clear that Collins' creditors have not been injured by the transaction."

Even if it were true that plaintiff purchased the stock of goods intending that Swike should have it, that would not make the sale void as to Swike's creditors. "One has a right to purchase the property of another and hold it for his benefit or permit him to enjoy the benefit of it. Such conduct can in nowise prejudice creditors." *Gutzweiler v. Lachman*, 28 Mo. 434; *Lampert v. Haydel*, 96 Mo. 439.

When a sale is public, after due notice, as in the case at bar, the fact that the party executing the deed of trust may have remained in possession of the property sold after the sale, is no evidence of fraud, and is good against everybody, if free from fraud in fact. *Garland v. Chambers*, 11 S. & M. 337; Freeman on Executions, sec. 151; *Walter v. Gernant*, 13 Pa. St. 515. The publicity of such sale dispenses with the necessity of an actual delivery of the possession. *Greathouse v. Brown*, 5 T. B. Monroe, 280; *Wyatt v. Stewart*, 34 Ala. 716. The reason of the rule is that the sale is not that of the debtor, but is the act of the law; and is unlike a sale or transfer by the debtor himself of personal property wherein the sale must be accompanied by a delivery of the property, in other words, a transfer of the possession. It follows that the judgment must be affirmed. All of this division concur.