# White v. The State.

*Indictment for Murder.*

1. *Evidence of general character; as to particular incidents.*—When a witness has testified to the good character of defendant for peace and quiet, it is competent, for the purpose of shedding light on the credibility of the witness's statement, to ask him on cross-examination, if he had not heard of a certain designated affray or fight in which the defendant participated.

2. *Same; same.*—While it is competent to ask a witness testifying to defendant's good character for peace and quiet, if he has not heard of a certain affray or fight in which defendant participated, it is not permissible, on his stating that he had heard of such an affray, to then ask him, if the defendant had not been tried for and acquitted of said affray; the evidence called for by such question being inadmissible.

3. *Same; must have reference to character at or before commission of offense charged.*—Evidence of the character of a defendant must be confined to the time of, and anterior to, the commission of the offense charged; and evidence of defendants good character while confined in jail under the charge for which he was being tried, is clearly inadmissible.

4. *Dying declarations; admissibility; charge of court.*—A statement

[White v. The State.]

made to a friend by a person who had been shot, just a few minutes before his death, "That man shot me. I am dying. Pray for me," is admissible in evidence as a dying declaration; but it is erroneous for the court, *ex mero motu*, to instruct the jury that the declaration, under the circumstances and in view of the condition of the deceased when it was made, "indicates that she then realized that she was about to die;" such instructions being a charge upon the effect of the evidence, which the statute (Code, § 2754) forbids.

5. *Murder; flight of defendant; charge to the jury.*—Where on a trial under an indictment for murder, the evidence shows that after the killing the defendant fled from the scene and went directly to police headquarters, about two miles distant, reported to the officer in charge what he had done and surrendered to that officer himself and the gun with which he had committed the homicide, a charge is correct and should be given which instructs the jury that "The flight of a defendant in a criminal case, may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it, whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive, and the jury may look to the fact that he went to police headquarters and gave himself up."

APPEAL from the City Court of Montgomery.

Tried before the Hon. WILLIAM S. THORINGTON.

The appellant was indicted and tried for the murder of Margaret Davis, was convicted of murder in the second degree, and sentenced to the penitentiary for 35 years.

The testimony on the part of the State tended to show that in Montgomery county, before the finding of this indictment and in the night time, without provocation or excuse, the defendant shot Margaret Davis with a gun, from the effects of which wound she died. The testimony for the defendant was that the shooting was done accidentally.

Upon the introduction of Chaney Mitchell as a witness for the State, she testified that about 2 or 3 o'clock in the morning she was awakened by the cries and screams of the children of the deceased, Margaret Davis, and that on going to the latter's room, she found the deceased lying upon the floor in her night clothing with a gun shot wound in her left side, and her clothing was on fire just about the part of her person where the wound was inflicted, and that the deceased lived but a few minutes after the witness went into her room.

Thereupon the solicitor asked the witness the following question: "Did Margaret Davis, the deceased, make any statement or say anything in your presence about the shooting?" The defendant objected to this question, the court overruled the objection, and the defendant duly excepted. The witness in answer to said question, stated that the deceased said: "That man has shot me, I am dying. Pray for me." The defendant moved the court to exclude this answer from the jury, and duly excepted to the court's overruling his motion. The witness further testified that these words were the only words uttered by the deceased after the witness entered her room; and that there was no other person present at the time the deceased made the declaration.

The sergeant of police of the city of Montgomery, testified that about 3 o'clock on the morning of the homicide, and shortly thereafter, the defendant came to police headquarters in the city of Montgomery, and surrendered himself, told the witness what had taken place, and turned over the gun to him.

The defendant introduced as a witness John W. Martin, who is captain of police in the city of Montgomery, who testified that he had known the defendant for a number of years, and that he knew the defendant's character for peace and quiet in the community in which he lived, and that his character was good. On cross-examination, the solicitor asked this witness the following question: "Have you not heard of an affray or fight in which the defendant participated?" Upon the witness answering that he had, he was then asked by the defendant: "Has not the defendant been tried and acquitted of said affray or fight inquired about?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

George W. Powell, jailor of Montgomery county was introduced as a witness for the defendant, and upon his testifying that the defendant had been in the county jail since September, 1893, he was asked the following question: "Do you think you know the character of the defendant for peace and quiet while an inmate of said jail?" The State objected to this question, which objection the court sustained, and the defendant duly excepted.

Upon the introduction of all the evidence, the court,

[White v. The State.]

*ex mero motu*, charged the jury, among other things, as follows : "T.·e statement of Margaret Davis to Chaney Mitchell that 'that man shot me, I am dying, pray for me,' under the circumstances, and in view of her condition, when made, indicates that she then realized she was about to die and you may consider it in connection with the other testimony, and determine what weight you will give to it." The defendant separately excepted to this portion of the court's general charge to the jury, and also separately excepted to the court's refusal to give each of the following charges requested by him : (1.)  "Questions propounded by the solicitor to character witnesses for defendant, as to whether they have heard of commission of other offenses by the defendant, ought not to be considered by the jury, and therefore should have no weight with them whatsoever."  (2.) "While the State on the cross-examination of a witness introduced by defendant to establish his good character, may ask said witness whether he had ever heard that defendant had committed other offenses going to his character, the law does not debar the State from proving as a matter of fact that defendant had been accused of or prosecuted for the offenses inquired about ; and when such inquiry on cross-examination is made and answers in the negative are given, the failure to produce such evidence may be considered by the jury as favorable to defendant in determining the question as to whether good character has been satisfactorily established, and in no event in such a case can the mind of the jury be biased by the propounding of such questions on the part of the State."

JAMES S. FULLER and THOMAS M. ARRINGTON, for appellant.—The declaration made by the deceased as testified to by the witness Mitchell was not admissible as a dying declaration.—*Justice v. State*, 99 Ala. 180 ; *Kilgore v. State*, 74 Ala. 1 ; *Ward v. State*, 78 Ala. 441 ; *Hussey v. State*, 87 Ala. 121 ; *Young v. State*, 95 Ala. 5 ; *Hammil v. State*, 90 Ala. 577.

The questions propounded to the witness Powell as to the character of the defendant since his incarceration should have been allowed.  The question asked the witness Martin as to whether or not he had been tried and acquitted of an affray in which he testified that the de-

fendant had participated should have been allowed; and the charges numbered one and two in reference thereto should have been given.—*Moulton v. State*, 88 Ala. 117; *Hussey v. State*, 87 Ala. 122; *Jones v. State*, 76 Ala. 9; *Ingram v. State*, 67 Ala. 72; *Moore v. State*, 68 Ala. 362; *Holmes v. State*, 88 Ala. 26; *Thompson v. State*, 100 Ala. 70; *Lowery v. State*, 98 Ala. 45; *Stoudenmeier v. Williamson*, 29 Ala. 558; 2 Taylor on Evidence, (7th Eng. ed.), § 470; 2 Brick. Dig. 549, § 125.

WILLIAM C. FITTS, Attorney-General, for the State.

HEAD, J.—The witness, John W. Martin, testified, for defendant, to the latter's good character for peace and quiet. The State, on cross-examination, asked the witness if he had not heard of an affray or fight in which the defendant participated. This was competent, not for the purpose of showing that defendant was not a peaceable and quiet man, but for the purpose of shedding light on the credibility of the witness's statement that defendant's character was good for peace and quiet.— *Lowery v. State*, 98 Ala. 49. The nature of the statement, according to the past rulings of this court, is such that it has relation to the subject of general character, in reference to which the witness was called to testify by the defendant. The question whether or not the witness knew that defendant had been tried for, and acquitted of, the assault or affray which he had heard the defendant participated in, was of a different nature. It was a statement of the witness's individual knowledge of a particular fact, sought to be introduced to shed light on the witness's knowledge of the defendant's general character for peace and quiet; and we think was not admissible.

The court properly refused to admit evidence of the defendant's good character whilst confined in jail under the charge for which he was being tried. Evidence of character must be confined to the time of, and anterior to, the alleged commission of the offense for which he is being tried.

The dying declaration testified to by the witness, Chaney Mitchell, was properly admitted. It, in connection with her condition and almost immediate death, carried, with itself, sufficient evidence of a sense of impending death, to justify the court in admitting it. But,

in view of the inhibition of the statute (Code, § 2754), the court was not justified in pronouncing, *ex mero motu*, upon its effect, as it did in the oral charge. The instruction was that'the declaration, "under the circumstances, and in view of her condition when made, indicates that she then realized she was about to die," &c. The word "indicates," as here used, is the same as "shows," and renders the instruction a charge upon the effect of the evidence, which the statute forbids. As the judgment must be reversed on other grounds, we will not decide whether this was error without injury, in view of the fact that the declaration as to the homicide, in its strongest light against defendant, was no more than that the defendant shot the deceased, and the undisputed evidence was that the defendant did shoot the deceased—he testifying to the fact himself, and defending only by seeking to show that it was an accident.

The matter of the first charge requested by defendant was not such as to which the court was under duty to instruct the jury.

The second charge was wrong in principle, argumentative and properly refused.

Charge number 4 was as follows: "The flight of a defendant, in a criminal case, may or may not be considered as a circumstance tending to prove guilt, depending on the motive which prompted it, whether a consciousness of guilt and a pending apprehension of being brought to justice caused the flight, or whether it was caused from some other and more innocent motive, and the jury may look to the fact that he went to police headquarters and gave himself up."

In *Bowles v. State*, 58 Ala. 335, we said: "All evasions or attempts to evade justice, by a person suspected or charged with crime, are circumstances from which a consciousness of guilt may be inferred, if connected with other criminating facts. Of themselves, they may not warrant a conviction, but they are relevant, as evidence, and the weight to which they are entitled, it is the province of the jury to determine, under proper instructions from the court. * * * Flight for which no proper motive can be assigned, and which remains unexplained, is a circumstance, all authorities agree, it is proper to submit to the jury, in connection with other evidence tending to show the guilt of the accused. In

the old common law, the rule which passed into a maxim was that flight was equivalent to a confession of guilt: *fatetur facimus qui judicium fugit.* At the present day it is regarded as a mere criminating circumstance, indicative of a consciousness of guilt, and of an attempt to evade justice, which is subject to infirmative considerations that may deprive it of all force. The 'unfavorable inference against the prisoner would be lessened if he voluntarily returned and surrendered himself to answer the accusation. \*   \*   \*   We think it permissible to prove the fact of flight, and all the facts connected with it, either to increase or diminish the probative force of the fact itself.''

In *Sylvester v. State*, 71 Ala. 17, we declared a principle in substantially the language of charge 4, under consideration.

The evidence shows that the defendant committed the homicide about 2 or 3 o'clock in the morning, that he fled from the place, and went directly to police headquarters about two miles distant, reported to the sergeant of police what he had done, and surrendered himself and the gun with which he had committed the act to that officer. There is, in the evidence, *no other fact or circumstance* touching the subject of flight. It is evident, therefore, that what the defendant did, in respect of flight, carried with it no evidence of a consciousness of guilt. It was no more than a commission of the homicide, flight from the place, and an immediate, voluntary surrender by the perpetrator to the constituted authorities confessing that he had committed it. Referred to this state of proof, the charge was correct, had no misleading tendency because of the singling out of a fact from other facts, and ought to have been given. It was not objectionable for referring specially to the duty of the jury to look to the surrender, for that, with the accompanying declarations of the defendant which constituted a part of the surrender, was the only circumstance which the jury could consider.

For the errors pointed out the judgment is reversed and the cause remanded. Let the defendant remain in custody until discharged by due course of law.

Reversed and remanded.