# Jackson *v.* The State.

*Larceny.*

(Decided January 11, 1912.   Rehearing denied January 30, 1912. 57  South.  594.)

1. *Larceny; Possession of Property.*—Where a daughter had possession of her father's money as his agent, and kept the same in her trunk, the taking of the money by her animo furandi constituted larceny.

2. *Appeal and Error; Harmless Error; Evidence.*—Where the undisputed evidence showed that the defendant and the daughter of the prosecutor left the county together and went to another town, it was not prejudicial to defendant to permit a question to the prosecutor as to whether he found out that defendant had left town, and his answer in the affirmative.

3. *Witness; Credibility; Character.*—Where the only testimony adduced as to the knowledge of a witness of the defendant's character was that he lived on the same place and had known defendant five or six years, question as to whether the witness had ever heard anything against the character of defendant was excluded without error.

4. *Appeal and Error; Harmless Error; Evidence.*—Where a witness had previously answered the same question without objection it was harmless error to refuse to permit a repetition

5. *Same; Presumption.*—Error must be affirmatively shown on appeal as it will not be presumed.

[Jackson v. The State.]

6. *Witnesses; Competency.*—After a severance is granted, it is competent for the state to use the other defendant as a witness in its behalf.

7. *Charge of Court; Applicability to Evidence.*—Where the evidence disclosed an intimacy between defendant and the daughter of the prosecutor, and that the daughter informed the defendant that she had money belonging to her father in her trunk, and that he told her to get it, and she could go with him to another state, and that, thereupon, she took the money, and went with him, a charge asserting that unless the jury found from the evidence beyond all reasonable doubt, and to a logical certainty that the defendant conspired with the daughter or aided, abetted or incited her to steal the money, they could not convict the defendant, was sufficiently favorable to defendant.

8. *Same; Effect of Evidence.*—The jury cannot or should not disregard the testimony of a biased witness if they believe that he testified truthfully, and hence, a charge asserting that if the jury found that a witness had exhibited malice or illwill toward the defendant, they might reject his entire testimony if they believed that the witness on that account was not worthy of belief, was properly refused, where such witness had testified as to facts necessarily within his knowledge, and had been corroborated by the defendant himself.

9. *Same; Undue Prominence.*—Where evidence is admitted for a specific purpose only, a charge confining its consideration to that purpose is not bad as giving undue prominence to particular facts.

10. *Same; Abstract.*—Where a charge does not state a correct legal principle applicable to the facts in a particu'ar case, it should be refused, although correct as to other facts.

11. *Same; Invading Province of Jury.*—While the jury are the sole judges of the credibility and weight of the evidence, they cannot arbitrarily reject testimony.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Daniel Jackson, alias, was convicted of larceny and he appeals.    Affirmed.

HILL, HILL, WHITING & STERN, for appellant.    The court improperly permitted evidence of the fact that the prosecutor found out that the defendant had gone away from there.—*Green v. The State,* 96 Ala. 31.    It is always competent to show bias of a witness by showing that he sustained such a relation to a party as would likely influence his testimony.—*Hall v. The State,* 137 Ala. 46; *So. Ry. v. Morris,* 143 Ala. 631.    The

[Jackson v. The State.]

court improperly permitted Lena Taylor to testify, as she had been indicted with defendant for the same offense.—*South v. The State*, 86 Ala. 617; *Woodley v. The State*, 103 Ala. 23.    The defendant should have been permitted to show by the witness that he had never heard anything against the character of the defendant.—*Hussey v. The State*, 87 Ala. 129, and authorities there cited.    The court erred in refusing to charge that if the witness had exhibited malice against the defendant, his testimony might be rejected.—*Burkett v. The State*, 154 Ala. 26; *Hammond v. The State*, 147 Ala. 83.    Counsel discuss other refused charges, but without citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

DE GRAFFENRIED, J.—The defendant and Lena Taylor were jointly indicted for the larceny of a $50 bill, the property of William Taylor.    The defendant, upon his motion, was granted a severance, was tried and convicted by a jury of the offense, was sentenced to the penitentiary, and appeals.

It appears that Lena Taylor is the daughter of said William Taylor, and that she lived with her father and mother as a member of their family.    It further appears that the father had more than $100 in cash, and that Lena Taylor had access to it.    The testimony of Lena Taylor tends to show that the money was kept in her trunk, that she kept the key, was the custodian of the money, and, to use her language, "that she used some of it; that her father never objected to it."

If Lena was in fact the custodian of the money, she was simply, under the evidence in this case, in possession of it as a member of her father's family—in law his servant—and her possession of the key and her owner-

ship of the trunk in which the money was kept in his house in no way affected her father's possession of the money. It is also evident that, if she at any time used any of the money, the use was for some legitimate purpose of herself or the family for which, as his child, she knew she possessed his consent. "It has often been decided, and is now settled law, that goods in the bare charge or custody of a servant are legally in the possession of the master, and the servant may be guilty of trespass and larceny by the fraudulent conversion of such goods to his own use."—*Crocheron v. State*, 86 Ala. 64, 5 South. 649, 11 Am. St. Rep. 18. The testimony, in the aspect most favorable to the defendant shows, as above stated, that the woman Lena Taylor had the bare charge or custody of the money, and, if she took the money described in the indictment animo furandi out of her trunk, she was guilty of larceny.—*Oxford v. State*, 33 Ala. 416; *Holbrook v. State*, 107 Ala. 154, 18 South. 109, 54 Am. St. Rep. 65.

It appears from the evidence offered on behalf of the state that the defendant and said Lena Taylor were criminally intimate with each other; that the defendant was informed by her of the existence and whereabouts of the money; that he decided to go to Savannah, Ga.; that he told Lena to get the money, asked her if she did not want to go to Savannah with him, and told her that, if she would get the money, she could go with him. Thereupon, the evidence tends to show, Lena Taylor took from the trunk something over $100, including the $50 bill described in the indictment, and she and the defendant left Montgomery county together, and together spent the money. The court, at the request of the defendant, charged the jury that, "unless you find from the evidence beyond all reasonable doubt and to a moral certainty that Dan Jackson conspired with

Lena Taylor or aided or abetted or incited Lena Taylor to steal the money of William Taylor, then you cannot convict the defendant." In the above charge, the court, it seems to us, placed the defendant's case before the jury as favorably for the defendant as it could, under the facts, have been placed.—1 Mayfield's Dig. p. 216, § 47. As the undisputed facts show that Lena Taylor was the bare custodian of the money, the court was justified in making the oral explanation of charge four given at the request of the defendant, to which an exception was reserved by the defendant, and, it was free from error in refusing the various written charges requested by the defendant covering the subject of embezzlement.

The evidence, without dispute, showed that defendant and Lena Taylor left Montgomery county together; that they went to Savannah together; and that they were together in Savannah at least a part of each night. There was therefore no error prejudicial to the defendant committed by the court in permitting the solicitor to ask the witness William Taylor the following question: "Did you find out that Daniel (meaning defendant) had gone away from there (meaning Ramer, Montgomery county)?" and in permitting the witness to answer the question in the affirmative.

3. On his cross-examination, the witness William Taylor testified, among other things, as follows: "That the defendant persuaded her to steal it; that she took it; that she had the power to go in there whenever she got ready; that he was low down enough to do it; that he had both his daughter and the defendant arrested; that he did not tell Mr. Walters on yesterday at the courthouse that the only reason he had the defendant arrested was because the defendant took his daughter, but that he did tell Mr. Walters that it would have

been all right if the defendant had not been married; that he said that and that was what he hated about it; that he did tell Mr. Walters that he would never have had the defendant arrested if the defendant had not been a married man." It is therefore evident that when the defendant asked said witness the following question: "You got him arrested because he is married and went off with your daughter?" the question had already been answered when it was asked, and, if the question was otherwise unobjectionable, the court committed no error of which the defendant can complain in refusing to allow the witness to answer it.

4. Charge "B," requested by the defendant, was properly refused. The charge was in the following language: "If you find that the witness William Taylor has exhibited malice or ill toward the defendant, Dan Jackson, you may reject his entire testimony, if you believe that said witness, on that account, is not worthy of belief." Malice and ill will entertained by a witness against a party to a cause may always be proven for the purpose of showing the bias of the witness so that the jury may say, under all the circumstances of the particular case, what, if any, weight shall be given to the testimony of such witness. Undoubtedly a jury has no right, however, to discard the entire testimony of a witness who, on account of bias or for any other reason, "is not worthy of belief" if they believe the witness swore truthfully when testifying as a witness in the case. In the present case the testimony of William Taylor was corroborated in some of its material parts, as to matters necessarily within his knowledge, by the testimony of the defendant himself, and in other material parts by the testimony of other witnesses, and, although the jury may have, because of his bias, believed that "he was not worthy of belief," yet, if the

jury believed any material portion of the evidence of Dan Jackson, they had no right to reject it in its entirety. The above charge is materially different from the charge which the Supreme Court held to be proper in *Hammond v. State,* 147 Ala. 79, 41 South. 761. In the Hammond Case the charge requested was as follows: "If any of the state's witnesses have exhibited malice against the defendant or anger, or have testified to contradictory statements and thereby satisfied the jury *that they have not testified truly,* and are not worthy of belief, and the jury think their testimony on these accounts should be discarded, they may discard it altogether." The italicized portion of the above charge emphasizes what we have above said, and indicates wherein charge "B" requested in this case was vicious. A charge similar to the charge above quoted from the *Hammond Case* was approved in *Burkett v. State,* 154 Ala. 19, 45 South. 682, but as the charge discussed in the Burkett Case was, as above pointed out, materially different from the charge now under discussion, that case is without value as an authority on the question here presented.

5. It appears from the record that, after the finding of the indictment and before pleading to it, the defendant demanded a severance, and the court made the order of severance prayed for by the defendant. After this order of severance was made, the defendant pleaded "not guilty" to the indictment, and the trial of the case was then had. Lena Taylor, who was jointly indicted with the defendant, was, after such severance as above stated, against the objection of the defendant, examined as a witness against him. Pretermitting any consideration of the question as to what, if any, effect the legislative enactments on the subject of the competency of witnesses which have been adopted since the

Legislature passed the acts now known as sections 7898 and 7899 of the Code have had upon said sections, it is evident that the court was, without regard to such subsequent legislative enactments, without error in permitting Lena Taylor to testify as a witness for the state. "The proper practice seems to be that where two or more defendants are jointly indicted neither is a witness for or against the other, unless some order is made in the case which amounts to an acquittal or a severance. The trial of the one proposed to be offered as a witness must be severed from that of the codefendant against whom he is offered; or else a nolle prosequi must be taken or a verdict of acquittal entered in favor of the proposed witness as authorized by the statute."—*Henderson v. State,* 70 Ala. 29; *South v. State,* 86 Ala. 617, 6 South. 52; *Woodley v. State,* 103 Ala. 23, 15 South. 820.

6. The bill of exceptions contains the following: "The defendant then introduced in evidence one J. E. Walters, who testified that he lived at Snowdoun; that he had known the defendant five or six years. The defendant then asked him the question, 'Have you ever heard anything against the character of this defendant?' The solicitor objected to this question, and the court sustained the objection, and the defendant then and there legally excepted."

Nothing is more plainly established than the proposition that on appeal all the presumptions are that the trial court committed no error. Error must be affirmatively shown by the record. It will never be presumed. There is nothing in the above testimony of the witness Walters tending to show that he was competent to testify either affirmatively or negatively to the defendant's character. For aught that the above questions and answers show, Walters may not have been born in the

neighborhood in which the defendant lived; he may have known no persons who was acquainted with the defendant or who lived where the defendant was known. In other words, "he failed to show that he was in such a position with reference to the defendant's residence, or circle of acquaintances, as that the fact of his not having heard anything against him would have had any tendency to show that nothing had been said, and that therefore his character was good."—*Holmes v. State,* 88 Ala. 26, 7 South. 193, 16 Am. St. Rep. 17. The court therefore properly refused to allow the witness to answer the above question.

After a careful examination of the record in this case, we are of the opinion that the record fails to disclose that the trial court committed any error on the defendant's trial. The judgment of the court below is therefore affirmed.

Affirmed.

On Application for Rehearing.

1. The frequency with which charges are asked that the jury in deliberating upon their verdict may consider certain specific testimony, or may reject certain specific testimony, or parts of testimony, leads us to announce the following in reply to the application for a rehearing in this case:

It frequently occurs that charges are asked which the trial court, because they tend to give undue prominence to that part of the testimony about which they are asked, should refuse. "There is, however," says Stone, Chief Justice, in *Smith v. State,* 88 Ala. 73, 7 South. 52, "a limited, exceptional class of cases, which does not fall within the rule. Testimony is sometimes admissible only for a specific purpose, such as the peaceable character of the defendant, who is accused of a crime of

[Jackson v. The State.]

violence or testimony impeaching or sustaining a witness, or testimony of previous threats, communicated or uncommunicated, made by the person on whom the injury was inflicted, or testimony proving or disproving the character of the person alleged to have been injured, for turbulence, violence, or blood-thirstiness. In such cases it is but right that the jury should be told to what extent this exceptional testimony should be weighed by them."—See, further, *Hale's Case*, 122 Ala. 85, 26 South. 236; *Roberts' Case*, 122 Ala. 47, 25 South. 238; *Perry's Case*, 78 Ala. 22.

2. It does not follow that, because a certain charge is held to be the law as applied to the facts of one case, it must be given in all other cases of the same general character. A charge which does not state a correct legal proposition as applied to the evidence in the case in which it is asked should not be given, although under the facts of some other case, it may have been held to be a correct charge.—*Outler v. State*, 147 Ala. 39, 41 South. 460; *Keller v. Holland*, 56 Ala. 603; *Ross, Adm'r, v. Pearson*, 21 Ala. 473; *Robinson v. Bullock*, 66 Ala. 548; *Street v. State*, 67 Ala. 87.

In the case of *Prater v. State*, 107 Ala. 26, 18 South. 238, cited by counsel for appellant in his brief on this application for a rehearing, the Supreme Court properly held that a charge asserting that "if the evidence convinces you that Ephraim Prewitt is a man of bad character, and unworthy of belief, then you may disregard his evidence altogether" should have been given. In that case the witness Prewitt was contradicted as to every material fact to which he testified. In the present case the witness William Taylor was corroborated in material parts of his testimony, not only by every other witness who testified in the case, but by the defendant himself, when he testified as a witness. The

facts to which William Taylor testified and which the defendant, when he testified as a witness, admitted to be true, were facts necessarily within the knowledge of said William Taylor. These facts were material, and, as the defendant himself corroborated the witness as to this part of his testimony, an instruction authorizing the jury to reject his testimony as a whole was not justified under the evidence.

While jurors are the sole judges of the credibility of witnesses and alone have the right to say what weight shall be given to their testimony, they have no right, under the law, to capriciously reject the testimony of any witness. If the trial judge had given charge B in this case, he would, in effect, have charged the jury that they had the right to capriciously reject certain material parts of William Taylor's testimony, the truth of which was admitted by the defendant, and the court properly refused to give the charge to the jury.

The application for a rehearing is overruled.

Overruled.