145 So. 816

### KELLEY et al. v. STATE.

### 6 Div. 51.

Supreme Court of Alabama.
Jan. 26, 1933.

Ernest B. Fite, of Hamilton, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

## KNIGHT, J.

The appellants, brothers, were jointly indicted in the circuit court of Marion county of the offense of murder in the first degree. They were each convicted of murder in the first degree, and their punishment fixed by the jury at imprisonment in the penitentiary for life. From sentences in accordance with the verdict of the jury the present joint appeal is prosecuted.

It appears from the bill of exceptions that the appellants are the sons of W. R. Kelley, and the victim of the alleged crime was the brother-in-law of the appellants, having married their sister. The defendants and their brother-in-law resided upon lands of the said W. R. Kelley, and their respective homes were within a distance of about a quarter of a mile of each other. Just a short time—a few days —before the killing the father, two of his daughters, and this son-in-law, became suddenly ill as the result of some supposed poison placed in their food. The son-in-law was of the opinion that Ernest Kelley, one of the defendants, was the guilty agent, and the day before he was killed he made a trip to Hamilton, supposedly to prosecute the said Ernest Kelley. On the part of the defendants, there was evidence of threats to kill made by the deceased against the party who administered the poison, and in which he is said to have stated that he knew the party who caused the poison to be placed in the

food, and the evidence leaves no room to doubt that he had in mind the said Ernest Kelley. However, the evidence on the part of the state tended to show that no such threats were made. The evidence does show fully and conclusively that there was considerable feeling between the parties.

If the evidence of the state was to be believed, the deceased was killed in cold blood, without any sort of provocation, in fact was waylaid as he was walking along the road which passed within twenty-five feet of the house of the defendant Ernest Kelley; that he was unarmed, and was in his shirt sleeves and trousers; and further that he was sent to his death without warning of any kind. According to the state's evidence, within a few seconds after the shot was fired from the door of Ernest Kelley's house, the two appellants were seen by a number of witnesses running from the scene of the shooting with shotguns in their hands. The defendant Ernest Kelley admitted that he did the killing, and exonerated his brother. The evidence for the state tended to connect the defendant Noah Kelley with the crime, at least as an aider or abetter before and at the time of the killing. The crime, if any, was committed on or about the 9th day of July, 1931.

The defendant Ernest Kelley, while admitting the killing, asserted that he shot his brother-in-law in self-defense. The evidence in that respect, however, is meager, and we have some doubt of its sufficiency to carry the case to the jury on that theory; nevertheless the trial judge deemed it sufficient, and many of his instructions to the jury were based upon his conclusion that the alleged overt acts of the deceased, coupled with the evidence of threats, entitled the defendants to have the issue of self-defense go to the jury.

The appellant Noah Kelley and his family lived a short distance from the home of Ernest Kelley. The family of the latter spent the night at the former's home on the night preceding the killing, and were there when the shooting occurred. Noah Kelley, according to the testimony of the defendants' witnesses, was with his brother Ernest during the night of July 8, 1931, the night before the killing, and, according to the defendants' testimony, the two brothers slept in a sedge patch on quilts, but returned to Ernest's house the next morning.

■ On the cross-examination of Clara Kelley, a witness for the state, the attorney for the defendants asked the witness this question: "Did your sister, Emily Burleson, tell you in that conversation that Dove did not want to get in the house with the boys; that he wanted to do what he could to keep down trouble? Did she make that statement to you and did you then make any reply to that?" The court sustained the state's objection to the above questions, saying, "It don't seem to

me that is competent. You may make it competent later on. At present, I will sustain the objection." The defendants duly reserved an exception to this ruling of the court. The questions called for immaterial, incompetent, and irrelevant evidence, and the court properly sustained the objection.

■ On the examination of Golden Howell, the sheriff of Marion county, a witness for the state, the solicitor asked the witness the following question: "Now, I will ask you what Ernest said in the presence of Noah, if Noah was present?" The defendant objected to the question on the grounds that it called for "incompetent, irrelevant and immaterial evidence." The court overruled the objection, and the defendants excepted. Just before the question was asked, and preliminary thereto, a proper predicate had been laid by showing that whatever statement was made by Ernest Kelley was voluntary. The question called for relevant, material, and competent testimony, and the court properly overruled the defendants' objection. The answer of the witness to the question was, "He said he had it to do." Continuing his testimony, the witness testified, "He just said 'Golden, Noah stood with me all the way through.' Noah did not say anything to that." Thereafter, in response to a question by the court, the witness testified, "Noah was close enough to hear him."

■ On redirect examination of Ernest Kelley, the attorney for the defendants asked him (Ernest) this question: "Now, Ernest, Mr. Wilson asked you about removing some flour up there. What did you do up there, about some flour, at your father's or McGuire's, or wherever it was?" The witness, proceeding to answer, said: "Well, there was some flour at McGuire's and papa and Burleson suggested that we should move the flour. * * *" Here the solicitor objected to what Burleson and somebody said. The court sustained the objection, and the defendants excepted. In this ruling of the court there was no error. However, the witness continued: "That wasn't any flour that I had carried up there, and I removed it at the suggestion of someone else. I had not put any poison out there in McGuire's flour, the only place I had put any was in my own flour." McGuire is the man this witness (defendant) subsequently killed.

■ The defendant Ernest Kelley was recalled by the defense, and was asked by the defendants' attorney the following question: "I want to ask you if you were up at McGuire's on the 4th of July, and did you hear him say that he knew the man that poisoned him and he was going to kill the son-of-a-bitch, and that he had served one term in the penitentiary, and he would serve another one?" The solicitor objected to the question; the court sustained the objection; and coun-

sel for the defendants then stated to the court: "I am offering it in the nature of a threat."

The court then stated to counsel for the defendants: "I will let you prove his threat, but not any statement about the penitentiary." The solicitor then stated: "I object to it because it is seeking to try to prejudice the jury and done for that purpose." Counsel for defendant thereupon excepted to the statement of the solicitor and moved the court to enter a mistrial in the cause. The court thereupon instructed the jury: "Gentlemen of the jury, what the solicitor says, and what the attorneys on either side say in these side remarks is not to be taken into consideration by you, and what the solicitor says about 'done to prejudice the jury' is not to be considered by you in considering this case, in any way whatever. No testimony, except what is permitted to go to you from witnesses from this stand, are you permitted to consider. Of course, you can consider the law and instructions, as given to you by the court, and you can consider the argument of counsel when we get to that, but these side remarks are not to be considered by you, and they must not be considered by you in determining the guilt or innocence of these defendants, or either one of them."

The court overruled defendants' motion for mistrial, and an exception was reserved thereto. We are fully persuaded that the very full and timely remarks of the court removed completely any prejudicial effect that the remarks of the solicitor may have produced upon the minds of the jury, and we are here of the opinion that the motion for mistrial was properly overruled.

The court then sustained the state's objection to said question. The action of the court in sustaining the state's objection to the last above objected to question was rendered harmless, and it appears that the witness was allowed to, and did, testify that he heard Jimmie McGuire make the statement on the 4th day of July, that he was going to kill the "son of a bitch" that had poisoned him. We think this fully showed the temper, animus, and threat made by the deceased against the person who poisoned him.

We have discussed all exceptions reserved by the defendants on admission and exclusion of evidence, which we have deemed of sufficient merit to require discussion in this opinion. It remains only to be said that every exception reserved by the defendants on admission and exclusion of evidence has had our consideration, and we find no error committed by the trial court involving injury to the defendants.

▮▮ There were some exceptions reserved by the defendants to parts of the court's oral charge. The first exception is thus stated:

"Counsel for the defendants excepted to that portion of the oral charge of the court where the court stated that the evidence in the case tends to show flight, noting an exception to the language used in that connection." This is not a proper way to reserve an exception to a part of the court's oral charge. The proper way, according to our uniform ruling, is "to select and recite what the court said," and certainly the substance of what the court said should be recited. Birmingham R., L. & P. Co. v. Cockrum, 179 Ala. 372, 60 So. 304; B'ham. R., L. & P. Co. v. Friedman, 187 Ala. 562, 570, 65 So. 939; Conway v. Robinson, 216 Ala. 495, 113 So. 531; Ex parte Cowart, 201 Ala. 55, 77 So. 349; L. & L. & G. Ins. Co. v. McCree, 213 Ala. 534, 105 So. 901; L. & N. R. R. Co. v. Parker, 223 Ala. 626, 138 So. 231.

▮▮ What the court said to the jury with reference to flight was: "There is some evidence here that tends to show flight. That, gentlemen of the jury, goes with all the other evidence in the case—goes to you with all the other evidence in the case, all of it to be weighed together, in determining whether or not these defendants are guilty. If you find that there was any evidence of flight from the place or scene of the killing, that with all of the other evidence in the case is to be considered in determining whether these defendants are guilty or not." We fail to see any just ground of criticism of this portion of the court's oral charge. It was not abstract, and asserted a sound principle of law. Flight of a person charged with a crime is a circumstance which the jury may take into consideration in determining his guilt. Sylvester v. State, 71 Ala. 17; Welsh v. State, 97 Ala. 1, 12 So. 275; Franklin v. State, 145 Ala. 669, 39 So. 979; Leonard v. State, 150 Ala. 89, 43 So. 214; Bowles v. State, 58 Ala. 335; White v. State, 111 Ala. 92, 21 So. 330; Allen v. State, 146 Ala. 61, 41 So. 624; Benjamin v. State, 148 Ala. 671, 41 So. 739; Smith v. State, 165 Ala. 50, 51 So. 610; Levison v. State, 54 Ala. 520.

The defendants also excepted to another part of the court's oral charge, which, for convenience, we have marked "X" upon the record. While this portion of the court's oral charge is not as clear as it might have been, yet its meaning was to tell the jury that, if at the time the fatal shot was fired there was no apparent danger of life or limb to the defendants, then the defendants would have had no right to kill the deceased. No doubt the jury fully understood that such was the import and meaning of the charge. There was no error in this portion of the court's oral charge.

▮ The defendants were not entitled to have the jury instructed in the terms of their refused charges. As to the defendant Ernest Kelley, these refused charges were fully cov-

ered by the court in its general oral charge, and therefore their refusal, even if erroneous, would not serve to reverse this case as to him.

The defendants also excepted to the following portion of the court's oral charge: "The law does not impose the duty on a man to retreat from his own home or castle. As to the defendant Noah Kelley, the rule is different. The evidence is undisputed that he was not in his own home, or castle, or house, and the duty of retreat is imposed upon him, provided he could have retreated without increasing his peril or danger." In so charging the jury as to the defendant Noah Kelley, the court fell into error, which will work a reversal of the case as to him. At the time of the fatal shooting, this defendant was in the home of Ernest Kelley it is true, but there was evidence in the case tending to show his presence in the home was by invitation, expressed or implied, of his brother Ernest Kelley. For all practical purposes, this house, under that phase of the evidence, was his castle; it was his shelter, as much so as if he had been its owner. This court, in the case of Walker v. State, 205 Ala. 197, 87 So. 833, 835, said: "It is a universal doctrine that a person assailed is not bound to retreat from his own dwelling, and this doctrine is applied to the curtilage, Madry v. State, 201 Ala. 512, 78 So. 866, where the authorities in this state are reviewed and reconciled or explained. This principle extends to guests in a dwelling house. As said by this court in Crawford v. State, 112 Ala. 1, 21 So. 214: 'The law has been long settled that a guest in a dwelling house is entitled to the protection the law affords to the owner or more permanent occupant.'" Suell v. Derricott, 161 Ala. 259, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Bowen v. State, 217 Ala. 574, 117 So. 204.

In the above excepted to portion of the court's oral charge, there was error as to the appellant Noah Kelley, which must work a reversal of this case as to him. We find no errors in the record as to the defendant Ernest Kelley, and the cause will be affirmed as to him, but reversed as to the defendant Noah Kelley.

Affirmed as to Ernest Kelley, and reversed and remanded as to Noah Kelley.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.

BROWN, J. (dissenting in part).

I concur in the opinion in all respects except as to the ruling of the court in refusing to admit that part of the threat proposed to be shown by Ernest Kelley and attributed to the deceased, "that he knew the man that poisoned him and he was going to kill the son of a bitch, *and that he had served one term in the penitentiary, and would serve another one.*" (Italics supplied.) The defendant was entitled to prove the threat in its entirety, and the part rejected tended to illustrate the state of the deceased's mind and the malignity of the threat, and shed light on his conduct at the time of the fatal rencounter. The defendants were convicted and sentenced for life, and this ruling probably resulted in injury. The jury should have had the entire threat before them. Narrell v. State, 222 Ala. 145, 132 So. 47; Buffalow v. State, 219 Ala. 407, 122 So. 633; Woods v. State, 20 Ala. App. 200, 101 So. 314; Lee Carter, alias., etc., v. State (Ala. Sup.) 145 So. 814,[1] this day decided. The judgment of conviction should therefore be reversed as to both defendants.

I therefore respectfully dissent in part.

