34. So.2d 692

## LOVEJOY v. STATE.

6 Div. 379.

Court of Appeals of Alabama.

Feb. 3, 1948.

Rehearing Denied Feb. 24, 1948.

See also 32 Ala.App. 110, 22 So.2d 537.

Erle Pettus and Jackson, Rives & Pettus, all of Birmingham, for appellant.

418

CARR, Judge.

This is the third appeal in this case. Lovejoy v. State, 31 Ala.App. 244, 15 So. 2d 300; Lovejoy v. State, 32 Ala.App. 110, 22 So.2d 532.

In the former opinions will be found a sufficient delineation of the evidence to suffice for the purposes of this opinion.

In the instant case the trial resulted in a conviction for murder in the second degree and the imposition of ten years' punishment.

■ In his opening statement to the jury the solicitor read the indictment without any comment. Appellant's attorney stated in response that the defendant "pleads not guilty and he pleads not guilty by reason of self-defense." The court disallowed counsel to also state to the jury what he expected the evidence to show. This matter was addressed to the sound discretion of the judge. We do not think that it was arbitrarily abused. Stewart v. State, 245 Ala. 511, 17 So.2d 871; Burns v. State, 226 Ala. 117, 145 So. 436.

■ It is cogently urged in oral argument and in brief that the attitude and conduct of the judge during the progress of the trial were highly prejudicial to the defendant and that we should base error for this reason. There was no motion for a new trial filed. We do not, therefore, make review of this insistence from this approach.

■ The court exercised his privilege to ask a witness a few questions. In this we do not find any invasion of the rights of the accused. When objections were in-

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

terposed, the judge made this statement: "I think I have a right to direct his attention to it, and, of course, you can make your objections to my questions just like anybody else." Register v. State, 19 Ala. App. 11, 94 So. 778; Holmes v. State, 22 Ala.App. 373, 115 So. 849.

■ The witness, as an expert, had testified that a bullet entering the human body showed a smooth surface and its exit left a "jagged hole." Subsequently to this testimony and while the same witness was being interrogated, the record discloses:

"(By the solicitor) Q. I want to ask you another question before it gets out of mind. How many jagged holes did you see in that body?

"Mr. Pettus: We object to that, if the court please.

"The Court: You mean by that exit holes?

"Q. Exit holes?

"Mr. Pettus: We object to that, if the court please. We object to the qualification 'exit' because we insist the jagged doesn't mean that.

"The Court: Overruled.

"Mr. Pettus: We except.

"A. Two.

"Q. You saw two jagged exits? Is that right? A. Yes, sir; yes, sir.

"Mr. Pettus: Now we move to exclude the answer, if the court please, on the ground that the two jagged exits—

"The Court: Overruled.

Mr. Pettus: —on the ground that the witness couldn't possibly know what was an exit.

"The Court: Overruled.

"Mr. Pettus: We object to the statement of the court when he asked about jagged wounds, the court said, 'You mean exit?' We except.

"The Court: I was asking him a question. Overruled."

With reference to this incident it is stressed that the court expressed his opinion on what constitutes an exit hole. It is seriously doubtful that there is any question here presented for our review on the matter about which complaint is made.

There are no grounds stated in support of the objection. But, all of this aside, we are convinced that in the light of the preceding testimony we would not be authorized to charge harmful error here.

■ In responding to an objection on the ground that the question called for hearsay evidence and in explaining his ruling, the court remarked: "Most experts get their knowledge partly from hearsay, as well as actual experience." The statement was perhaps inappropriate, but clearly we should not base error for this cause.

■ A witness was asked to describe a butcher knife which he claimed the deceased had at the time of the killing. In response the witness volunteered the statement: "It should have been in court." The solicitor stated: "I did not ask you that." The judge admonished: "Don't make any more remarks like that. You answer the question. Confine your testimony to that." Obviously and unquestionably the court had a right to thus caution the witness.

We are fully persuaded from a careful and considerate study of the record that the judge demonstrated his desire to afford the defendant a fair and unprejudiced trial. This is evidenced by the response to many objections and motions throughout the progress of the trial and the further fact that out of one hundred and seventy-five written charges, which were tendered by the accused, the court gave eighty-four of these. The oral charge of the trial judge covers seventeen typewritten transcript pages.

The State introduced a witness by the name of Propst who examined the deceased at the hospital soon after the affray. With reference to his qualifications as an expert to testify to the nature and character of the wounds in question, it was shown that he had been a member of the homicide squad of the Birmingham Police Department for a number of years; that during his tenure he had been afforded opportunities to observe and examine many bodies upon which pistol wounds had been inflicted; that he served in one world war and this gave occasions of contact and observation of wounded bodies and firearms; that he had carried a pistol of the same caliber and make as the one with

which the deceased was shot, for twenty-five years; that he had fired the pistol a number of times and had observed the entrances and exits of its bullets by firing into white side meat. There was other evidence, which we will not attempt to delineate, which tended to show his expert qualifications.

There were a great number of objections interposed while the witness was being interrogated with reference to his knowledge, experience, etc. These questions related in the main to matters which had a tendency to establish the competency of the witness, and we do not find in any of these rulings any error which could inure to the injury of the appellant.

■ Whether or not a witness is shown to possess the requisite qualifications to give evidence as an expert is a matter of preliminary inquiry, and the sufficiency vel non is largely within the enlightened discretion of the trial judge. On appeal the rulings thereon will not ordinarily be disturbed unless a clear abuse is shown. Hicks v. State, 247 Ala. 439, 25 So. 2d 139; Kozlowski v. State, 248 Ala. 304, 27 So.2d 818; Stewart v. Sloss-Sheffield Steel & Iron Co., 170 Ala. 544, 54 So. 48, Ann. Cas.1912 D, 815; Wilson v. State, 31 Ala. App. 21, 11 So.2d 563.

■ We hold that no abuse of discretion appears in allowing the witness Propst to testify that a pistol bullet entering the human body made a smooth surface and that a jagged hole indicated the place of exit. This is in harmony with the holding in Rohn v. State, 186 Ala. 5, 65 So. 42, 43:

"As illustrative of the position of the deceased when shot, and for the purpose of contradicting defendant's testimony in that regard, it was clearly competent for the state to prove that bullet wounds are characteristically different at the points of entry and exit, respectively, and what that difference is; and any one who has often observed and examined such wounds is a competent witness thereto."

Without error, also, the witness was permitted to state that he observed on the body of the deceased a smooth-surfaced wound in the back and a jagged one in the front.

It appears to us that in the final analysis, if error is apparent in the matter of instant concern, it must be hypothesized upon the following ruling:

"Q. Based on the experience that you have testified to here and on the knowledge that you have testified to here of the nature of wounds made by a .45 caliber Colt automatic, such as I hold in my hand, I will ask you whether or not, in your opinion, the hole that you saw in Arthur Goodwin's back was made by a bullet entering or leaving the body?

"Mr. Pettus: We object to that, if the court please; it calls for the conclusion of the witness; the witness is not properly qualified; not shown he has sufficient facts on which to base such a conclusion; it is immaterial, irrelevant, incompetent and illegal, and invades the province of the jury —

"The Court: Overruled.

"Mr. Pettus: — leading and suggestive. We except.

"A. The hole in the back was made from going in."

■ Our courts are committed to the rule that a witness, even though an expert, cannot give evidence of his opinion of the relative positions of the combatants when the shot was fired. · This for the very good reason that, having been given the description and characteristics of the wounds, the jury is equally as competent as the witness to judge and decide the location and position of the parties participating in the affray. In short, such testimony would be invasive of the province of the jury. McKee v. State, 82 Ala. 32, 2 So. 451; Mathis v. State, 15 Ala.App. 245, 73 So. 122; Humber v. State, 19 Ala. App. 451, 99 So. 68; Dumas v. State, 159 Ala. 42, 49 So. 224, 133 Am.St.Rep. 17; Blackburn v. State, 22 Ala.App. 561, 117 So. 614.

The question is here posed: Was this rule violated in permitting the witness to answer, "The hole in the back was made from going in"?

In the Mathis case, supra, [15 Ala.App. 245, 73 So. 124], this court observed: "But we do not think the testimony of Dr. Flowers trenched upon the prerogative of

the jury in this respect in his answer that: 'It [the load] didn't look to be shot right straight in front; it looked to be a little bit that way (indicating).' This was merely an effort to describe the character of the wound and the range the load took."

See also, Roan v. State, 225 Ala. 428, 143 So. 454; Pruitt v. State, 232 Ala. 421, 168 So. 149.

As we have stated, the expert witness had testified that an entering pistol bullet left a smooth surface and that he observed this described wound in the back of the deceased. We entertain the view that the answer quoted above extended no further than to give a different description from that already disclosed of the hole in back. We hold, therefore, that the answer was not invasive of the province of the jury, but on the contrary was such that the expert witness was competent to give.

This aside, we are enjoined to give effect to the provisions and directions of Sec. 389, Title 15, Code 1940. We are convinced that we would do violence to this enactment if we should order a reversal of the judgment below because of this permitted answer. Clearly, in consonance with the evidence that had preceded, no harmful injury resulted to appellant by this admittance.

The question to the officer, "Did you make any investigation to learn about the butcher knife that the dead man had?" assumes as true a fact which was in dispute.

The solicitor asked a State's witness whether or not she knew the wife of the deceased. The affirmative answer came before the objections were interposed. Smith v. State, 16 Ala.App. 546, 79 So. 802.

The court allowed the State to prove that a witness saw Johnnie Lovejoy, son of the defendant, in bed with the wife of the deceased subsequently to the time of the killing. This identical question was decided on a former appeal. Lovejoy v. State, 31 Ala.App. 244, 15 So.2d 300.

It is insisted in brief that the trial court should not have threatened to fine a witness if he did not speak louder. Because of this incident, appellant's counsel moved for a mistrial which was overruled. All of this, including the motion for a mistrial, occurred at a former trial. It appears in the instant record by virtue of an agreement to introduce this evidence in the proceedings in the case at bar. The witness was not in attendance at the trial which is the basis of this appeal.

It is insisted by counsel for appellant that: "The court erred in sustaining the State's objection to the question of the witness F. B. Ellzey that the defendant, in the presence of the deceased, had asked the witness, who was then a police officer, to make Goodwin stay away from his son and let him alone." This called for a self-serving reply, which would have been inadmissible.

Whether or not the officer had arrested the deceased several times for breach of the peace was an effort to prove particular acts in support of the contention that the deceased was a man of violent and turbulent character. This is not permissible. Jones et al. v. State, 20 Ala.App. 247, 101 So. 331; Stephens v. State, 17 Ala.App. 548, 86 So. 111.

Counsel excepted to the omission of the court to charge orally on the doctrine of manslaughter in the second degree. This was not the proper approach. The remedy was to request a written instruction. Davis v. State, 246 Ala. 101, 19 So.2d 358. In any event, in no aspect of the evidence would a conviction for manslaughter in the second degree be justified or appropriate.

Counsel further insists: "The court erred in that portion of its oral charge to which exception was duly reserved in which the court stated that the State contends the knife was smaller than a butcher knife. This charge was substantially upon the effect of the evidence." The court does not violate the provisions of Title 7, Sec. 270, Code 1940, by merely stating to the jury the contentions of the parties litigant. St. Louis & S. F. R. Co. v. Dennis, 212 Ala. 590, 103 So. 894.

Exceptions were reserved to this portion of the court's oral charge:

"I have just said that this defendant stood in the shoes or stands in the shoes

of his son, Johnnie Lovejoy; in other words, gentlemen, when a man intervenes and kills in the defense of another, he does so at his peril; and, regardless of whether he knows anything about it or not, if that other is not absolutely free from fault in bringing on the difficulty, then the one who kills in his defense cannot justify the killing on the theory that he was acting in the defense of the person that he was attempting to protect."

In a former appeal of this cause, 31 Ala. App. 244, 15 So.2d 300, Judge Rice, then a member of this court, discussed at length the doctrine of the right to come to the defense of another. It appears that reference to this case and the authorities cited therein will suffice to illustrate the correctness of the quoted portion of the oral charge.

We may add that this court has specifically held: "The condition must have existed as an actual fact that the brother, who was a principal in the difficulty, was free from fault to authorize the defendant to intervene and strike in self-defense in his behalf." Weaver v. State, 1 Ala.App. 48, 55 So. 956, 960.

In support of the urgency here, counsel takes the position that the instruction "ignores the question of reasonable belief at the time, the reasonable appearance at the time." The law is not in accord with this insistence.

The remaining exceptions to the oral charge are so fragmentary and indefinite that they do not invite our review. Kelley v. State, 226 Ala. 80, 145 So. 816; Brock v. State, 28 Ala.App. 52, 178 So. 547.

We come now to consider the written instructions which were refused to the defendant. Because of the great number we will omit any extended elaboration of our views.

The following charges are abstract: 6, 20, 52, 73, 89, 127, 167, and 180. Outler v. State, 147 Ala. 39, 41 So. 460; Jackson v. State, 5 Ala.App. 306, 57 So. 594.

These are invasive of the province of the jury: 53, 54, 55, 56, 97, 102, 111, 122, 139, 141, 143, 153, 157, and 178. Pounds v. State, 15 Ala.App. 223, 73 So. 127; Jennings v. State, 15 Ala.App. 116, 72 So. 690.

Each of the following omits some essential element incident to the doctrine of self-defense: 61, 83, 84, 85, 86, 90, 94, 98, 101, 103, 112, 115, 118, 121, 151, 161, 162, 163, 164, 168, 172, 175, 177, and 179.

Charge number 133 is argumentative.

In Wilson v. State, 243 Ala. 1, 8 So.2d 422, these charges were considered and disapproved: 3, 9, 10, 11, 12, 13, 14, 15, 16, and 21.

For an additional treatment of some of the just above numbered instructions, see also Bringhurst v. State, 31 Ala.App. 608, 20 So.2d 885; Curlette v. State, 25 Ala. App. 179, 142 So. 775.

There was no error in refusing charge No. 4. Dryman v. State, 102 Ala. 130, 15 So. 433; Steele v. State, 19 Ala. App. 598, 99 So. 745.

Instructions which contain the same vice as that of charge 8 were condemned in Wilson v. State, supra.

It was proper to refuse charge number 22. Barnett v. State, 16 Ala.App. 539, 79 So. 675.

On the authority of Bringhurst v. State, supra, and cases cited therein, we hold that there was no impropriety in refusing charge number 29.

The fault of charge number 40 is illustrated in Russo v. State, 236 Ala. 155, 181 So. 502, ad Diamond v. State, 15 Ala. App. 33, 72 So. 558.

Charge 41 was condemned in Maxwell v. State, 89 Ala. 150, 7 So. 824. See also, Phelps v. State, ante, p. 89, 30 So.2d 38.

Charges 43 and 135, which are in substantial counterpart, were refused without error. Robinson v. State, 243 Ala. 684, 11 So.2d 732; Waller v. State, 32 Ala.App. 586, 28 So.2d 815.

Charge 45 is calculated to mislead the jury. Raymond v. State, 21 Ala.App. 107, 105 So. 394; Morris v. State, 18 Ala. App. 456, 93 So. 61.

■ Written instructions numbered 58, 92, 93, 104, 144, 146, 147, 148, 170, and 171 each attempts to submit to the jury a question of law without an explanation of what constitutes self-defense or justification for the homicide. Stockdale v. State, 165 Ala. 12, 51 So. 563; Gettings v. State, 32 Ala. App. 644, 29 So.2d 677.

■ Refused charge 63 lays too great emphasis on the individual views of the jurors. Jones v. State, 213 Ala. 390, 104 So. 773; Gilbreath v. State, 23 Ala.App. 579, 129 So. 312.

■ Charges 82, 110, and 160 are in substantial duplicate. They were properly refused. Smith v. State, 243 Ala. 254, 11 So.2d 471; Favors v. State, 32 Ala.App. 139, 22 So.2d 914.

The vice denounced in Madry v. State, 201 Ala. 512, 78 So. 866, is contained in charges 95, 119, and 173.

■ The defendant was not authorized to act on the reasonable belief that his son was free from fault. Nothing short of the actual fact of its existence would suffice to supply this essential element of self defense. For this reason, if for none other, charge 129 should not have been given. Weaver v. State, 1 Ala.App. 48, 55 So. 956.

■ Charge number 131 is not clearly stated, but when it is taken as it evidently was intended, it is faulty. Hudson v. State, 217 Ala. 479, 116 So. 800; Powell v. State, 20 Ala.App. 606, 104 So. 551.

Charge 136 is bad. Hudson v. State, supra; Moody v. State, 21 Ala.App. 30, 104, So. 875.

■ The remainder of the charges which were refused to the defendant were substantially covered either by the oral charge or other given written instructions, in some instances by both. Title 7, Sec. 273, Code 1940; Gettings v. State, supra.

We have endeavored to respond to each question presented by this record for our review which we considered of sufficient merit to warrant a treatment.

There is no harmful error apparent. The judgment of the court below is, therefore, ordered affirmed.

Affirmed.