188 So.2d 915

**Leonard WEIGART**

v.

**STATE.**

**8 Div. 976.**

Court of Appeals of Alabama.

Jan. 19, 1965.

Rehearing Denied May 18, 1965.

---

W. A. Barnett, Florence, for appellant.

Richmond M. Flowers, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant, Leonard Weigart, was tried under an indictment returned by the Grand Jury of Lauderdale County charging him with manufacturing whiskey and possession of a still. He was convicted and sentenced for the possession of a still. Hence, this appeal.

Three law enforcement officers, Jim Lusk, Investigator in charge of the Alcoholic Tax Unit of the Revenue Service for the United States, Lauderdale County, Chief Deputy Sheriff George McCorkle, and Alabama Beverage Control Agent Penny Summers, made a raid on a still in Lauderdale County on July 7, 1963, at a point about two miles southwest of Anderson.

Mr. Lusk testified that he had been to the still site on a previous occasion, that on the day of the raid he and the two other officers drove in a car to a point about a half mile south of the still site, and that he, Lusk, got out of the car and walked to a point about thirty yards from the still, where he took a position to observe the still. He stated that from that position he saw a truck at the still site, that he "could hear some moving and talking and some bumping going on down there and I couldn't see anybody," and that he could see whiskey coming out of the condenser at the still. Mr. Lusk testified that after a minute or so he backed out of his position near the still and radioed instructions to the two other officers waiting in the car.

Mr. McCorkle, the first officer to reach the still, and the only witness who testified concerning the appellant's presence and activity at the still site, testified that he approached the site by car upon instructions from Mr. Lusk, and that when he got near the site he saw the appellant at the site standing up over a fifty gallon barrel holding a five gallon army G.I. can "in a position like he was pouring something out" into the barrel. McCorkle testified that he could not tell whether anything was actually poured from the can but after the raid he smelled the can and it had a strong smell of whiskey.

McCorkle further testified that at about the same time he saw the appellant, a truck drove into the still site and two boys jumped from the truck and ran from the scene. McCorkle stated that, as he was approaching, the appellant took two or three steps away from the barrel and looked in the direction from which McCorkle was approaching, then turned back and ran through the still "in between the thumper and the condenser" and attempted to flee

the scene, and that he ran the appellant down and arrested him about 100 yards from the still and turned him over to A.B.C. Agent Summers.

Summers testified that while McCorkle and Lusk were out of sight, the appellant voluntarily said to him that he "was just caught down there and ought not to have been there," and that he "would like to get out of it, get it settled and get out of it the easiest way he could, get it settled off." The appellant admitted making these statements.

The State proved that all of the component parts of a still were present at the site and that each part was commonly and generally used for the purpose of manufacturing illegal whiskey.

Mr. Lusk testified that he examined the still after the raid, that a line between the thumper and the condenser was broken and steam was coming out of the line, that whiskey was still running from the condenser spout, that there was a one gallon jug under the condenser spout with whiskey in it, that there was an army G.I. can nearby, and that on a "bank out above or next to the condenser was 25 gallons in a 50 gallon wooden barrel." Mr. Lusk testified that he tasted and smelled the substance in the barrel and that "it was whiskey."

McCorkle testified that he did not notice that the line between the thumper and the condenser was down, or that steam was coming from the line, until he had returned to the still after arresting the appellant.

The still was located near a house occupied by a Mr. Parker, who was the record owner of the land upon which the still was operated, and the appellant's truck was found in the garage at Mr. Parker's house.

The appellant testified that he went to Mr. Parker's house on the day of the raid and blew the horn on his truck, and that no one came to the door; that he parked the truck in the garage because he did not want to leave it in the hot sun; that he got

a hoe and hoed some cotton in the field "to see how long it would take to work it if I bought it"; and that he returned the hoe to the garage after a while and walked back across the cotton patch and into a wooded area, thinking he might find some water, and discovered the still. The appellant further testified that he walked away from the still when he saw a car coming, that he did not touch the army can or any part of the still, and that he had no interest in the still and did not know it was there.

■ The mere presence of a defendant at a still, without more will not warrant a conviction for its possession, but, the courts of this state are committed to the theory that any act of the defendant in and about a still which indicates an interest in, or that he is aiding and abetting in the possession, may be taken as sufficient upon which to base a verdict of guilt. Purser v. State, 39 Ala.App. 169, 96 So.2d 689; Morrow v. State, 39 Ala.App. 204, 97 So.2d 545; Anderson v. State, 39 Ala.App. 400, 103 So. 2d 796, Cert. Den. 267 Ala. 694, 103 So.2d 809; Mitchell v. State, 38 Ala.App. 546, 89 So.2d 238.

■ We are of the opinion that the evidence against the appellant was sufficient from which the jury could have inferred that the appellant had an interest in, or exercised some dominion over the still. No error resulted in the refusal of the general affirmative charge nor in the denial of the motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.

The appellant reserved this exception to the court's oral charge: "The defendant reserves an exception to the statement where the Court commented on a fact that's not supported by the evidence that it is the contention of the State that the man ran back toward the center of the still and knocked the line down. We take the position that's a comment on the evidence."

The exception was apparently directed to the following statement by the Court:

"The State further contends that the defendant, upon the officers approaching, ran toward the center, so to speak, of the still and that as soon as they approached and looked that a line of the still was disconnected at that time and was broken."

In response to the exception, the Court instructed the jury, "you are the sole and only judges of the evidence and what I stated to you in the charge I repeat now— that the State by its case contends that is what the defendant did; whether he did it or whether he was even there, the Court doesn't comment. The evidence is for you to determine."

T. 7, Sec. 270, Code of Alabama, 1940, provides the following:

"The court may state to the jury the · law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties."

■ The trial judge does not violate the provisions of this section by merely stating to the jury the contentions of the parties to the suit. Hall v. State, 36 Ala.App. 407, 58 So.2d 479; Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692; Thomas v. State, 34 Ala.App. 470, 41 So.2d 435; St. Louis & S. F. R. Co. v. Dennis, 212 Ala. 590, 103 So. 894.

We find no reversible error in the record and the judgment is due to be and the same is hereby

Affirmed.

CATES, J., concurs in the result.

On Rehearing

JOHNSON, Judge.

The brief filed in support of the application for rehearing requests us to extend and modify our original opinion.

Therein we stated, in effect, that Mr. Lusk testified that he saw whiskey coming from the condenser prior to the raid on the still. This was based upon the following testimony given by Lusk:

"Q. I will ask you if you were ever closer than 30 yards of the still before the raid?

"A. No, sir. That spot was the closest spot I got to it before the raid.

"Q. And when you got back over there was the still fully connected?

"A. It was not.

"Q. Do you know whether it was fully connected at the time you were 30 yards away?

"A. I do not know from my own knowledge. I didn't see it.

"Q. Then you didn't see whiskey coming out, did you?

"A. Yes, I saw some whiskey coming out of the condenser.

"Q. You saw steam?

"A. No, I saw liquid whiskey coming out of the condenser.

"Q. And it was disconnected?

"A. That's true."

Upon considering this testimony for the second time, we are convinced that the jury could only conclude therefrom that Lusk saw whiskey coming from the condenser after, and not before the raid on the still. Even so, other evidence is sufficient to sustain the verdict, and show that appellant had an interest in or exercised some dominion over a complete still.

The transcript clearly supports our original summary of the testimony of McCorkle, except perhaps our statement that McCorkle testified that the appellant ran "through the still."

However, it appears from the testimony of McCorkle that appellant did pass in between the condenser and the thumper before he left the immediate vicinity of the still site. The prosecution used a chart or map of the still site when presenting its case, and the following testimony was given by McCorkle while referring to this map:

"Q. On the board show then where Weigart was?

"A. This is the still right here (indicating). This is the condenser (indicating) and this (indicating) is the ditch; it is between this field road and then there is a little ditch and this (indicating) is the still and furnace. This (indicating) is the condenser here and this is the barrel right here (indicating)—this barrel was sitting up right under this little tree, that little mark is supposed to be a tree, that barrel was there and Mr. Weigart was right under this little tree on top of the bank and he come out over toward the road two or three steps and then he went back like that and when he left he come back around and went through there (indicating). *That would be in between this thumper and the condenser.*" (Italics ours.)

The words "indicating" which appear in parentheses were obviously added by the court reporter for the purpose of showing that the witness was referring to the map as he testified.

We find no merit in counsel's contention that this court "failed in its finding in regard to Tit. 7, Sec. 270, of the Code of Alabama 1940." The trial judge in his oral charge merely stated what the State contended the facts of the case were. He did not give undue emphasis to the contentions of the State, and he also stated the contentions of the appellant.

Further, there is evidence, although circumstantial, to warrant the State's contention that appellant broke the line running from the thumper to the condenser. A witness for the State saw appellant run between the thumper and condenser before he ran from the still site. This witness did not notice that this line was down or that steam was coming therefrom until he had returned to the site after running appellant down and arresting him.

With the modification of the original opinion to the extent as herein stated, we adhere to the conclusions therein announced, and hold that the application for rehearing is not well taken.

Application for rehearing overruled.

PRICE, P. J., not sitting.